PEOPLE v. KELLER.

1. CRIMINAL LAW—STATUTORY RAPE—WITNESSES.
    In a prosecution for statutory rape by defendant upon his daughter, testimony by another daughter as to admissions made by prosecutrix of relations with other men which would account for her physical condition, *held*, admissible.

2. SAME—CROSS-EXAMINATION—CREDIBILITY OF WITNESSES.
    While it was within the discretion of the court to permit said witness, on cross-examination, to be interrogated as to her improper relations with defendant, for the purpose of affecting her credibility, it was an abuse of discretion to permit her to be asked whether defendant had not admitted that he was guilty of having said unlawful relations with her.

3. SAME—NEW TRIAL—DISCRETION OF COURT.
    In said case, where it appeared that the prosecutrix might have ,an ulterior motive in making said charge against her father and she appeared to have little regard for or appreciation of the nature of an oath, a new trial should have been granted by the trial court, in the exercise of a liberal discretion under the circumstances.

Error to Kent; Perkins (Willis B.), J.  Submitted
April 18, 1924.  (Docket No. 137.)  Decided June
2, 1924.

Jesse Keller was convicted of taking indecent liber-
ties with the person of a female child, and sentenced
to imprisonment for not less than 5 nor more than 10
years in the State prison at Jackson.  Reversed.

*John J. Smolenski,* for appellant.

*Cornelius Hoffius,* Prosecuting Attorney, and *Arthur
R. Sherk,* Assistant Prosecuting Attorney, for the
people.

SHARPE, J.  The information in this case charged
defendant with having committed the crime of statu-
tory rape on his daughter, Leah, a female child under
the age of 16 years.  In a second count he was
charged with taking indecent liberties with her person.
He was convicted on the latter count and, after denial
of a motion for a new trial, was sentenced to serve
from 5 to 10 years in the State prison, with the recom-
mendation of 5 years as a minimum sentence.  He
here reviews his conviction on writ of error.

Leah, 13 years of age at the time of the alleged
assault, testified that she was living at the farm home
with her father and her stepmother; that on the
occasion in question she went to the barn with some
"potato parings" to feed the cow; it was then dark;
that her father was there in the barn and he told her
to go upstairs; that he followed her with a lantern,
told her to lie down on some bags on the floor; that
she did so and he then had sexual intercourse with
her; that he had had such intercourse with her at
other times before that.  Dr. Cora Moon, called as
a witness for the people, testified that she examined
Leah on January 27th and found conditions such as

might have resulted from an act of sexual intercourse. No other corroborative proof was offered.

Defendant's counsel cross-examined Leah at great length. She admitted that she had had trouble with her stepmother and been punished by her, and had complained to her sister Alice (Mrs. Vossen), then living at home, and her school-teacher about it, and had "threatened to leave home and go away;" that she was mad at her father "because he made me apologize to my stepmother;" that the day following the alleged assault she went after school with her teacher to the juvenile court; that she had several times told her sister that her father had had intercourse with her and she also told the matron of the juvenile home, to which she was sent. She admitted that she had talked with Alice "about indecent relations and indecent stories," but denied that she had told her about improper or unlawful conduct with other persons. The people then rested their case.

The defense called Leah's sister, Alice, who was permitted without objection to relate her conversation with Leah, which had been denied by her, in which she told about having improper relations with other men. She testified that there were no bags on the upper floor of the barn at the time charged; that they had all been sold prior to that time. On cross-examination, she was interrogated at length as to improper relations with her father. It was shown that she had made a sworn complaint charging him with incest, although she stated that she did not understand that she was charging her father with such an offense. She was then asked:

"Well, you knew your father pleaded guilty to that offense, didn't you?"

To this strenuous objection was made. Her answer was taken, and was in the nature of a denial.

The fact in dispute which the jury were called upon

to determine was whether the story told by Leah as to what occurred in the barn was true.    To that end, all testimony bearing upon her credibility was admissible.    That of her sister Alice, tending to show by Leah's admissions that her physical condition was due to improper relations with others, was clearly admissible.    The jury were then called upon to decide which of the two sisters they would believe.    Clearly, any facts might be developed on the cross-examination of Alice which would tend to affect her credibility.    It was within the discretion of the court to permit her to be interrogated as to improper relations with her father.    But we think there was an abuse of discretion, resulting in manifest prejudice to the defendant, in permitting this witness to be asked whether the defendant had not admitted that he was guilty of having had unlawful relations with her.    It is true that she denied it, as did also a witness who was present and called in rebuttal by the people.    The defendant as a witness also denied making any such admission.    But, as was said in *People* v. *Hunter,* 218 Mich. 525, 527, "it was one of those questions which, coming from a public prosecutor, had its weight, and would ordinarily leave a strong impression upon a jury."    See, also, *People* v. *Ruggero,* 223 Mich. 368.

Defendant moved for a new trial on the ground that the verdict was against the great weight of the evidence.    His counsel also submitted on such motion an affidavit of Leah, sworn to on June 20, 1923 (the trial ended some time in April), in which she deposed "that her father never had intercourse with her, * * * and that her father never was in any way familiar with her in an indecent way."    The prosecution met this by a later affidavit made by Leah, sworn to on July 13, 1923, in which she deposed that "the testimony she gave at the trial is true," and that

she was induced to make the former affidavit by her stepmother and sister Alice. We think it unfortunate that the court did not require Leah to be produced as a witness on the hearing of this motion. The unreliability of affidavits as evidence has long been recognized. Had Leah been brought before the court and examined, the judge would have been enabled to form an opinion of the weight which should be given to her conflicting sworn statements, which we would be loath to disturb.

We have many times alluded to the care with which this class of cases should be tried. The direct testimony is usually, as here, confined to the charge of the little girl and the denial of the defendant. Juries, as a rule, seem prone to accept the story told by the girl as sufficient to convince them of the guilt of the defendant beyond a reasonable doubt. When it appears that she has any ulterior reason for making such a charge, or the truth of the story told by her is rendered improbable by any facts admitted or fairly established by proof, or when it appears, as here, that she has little regard for or appreciation of the nature of an oath, we think that trial courts should be liberal in the exercise of their discretion to grant a new trial before another jury.

In view of the error above referred to and the contradictory affidavits made by her, we are persuaded that justice requires that a new trial be had. The judgment is set aside and a new trial granted.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.