PEOPLE *v.* HUNTER.

1. RAPE—STATUTORY RAPE—TIME—EVIDENCE—INSTRUCTIONS.
    Verdict of guilty of charge of statutory rape may not be per-
    mitted to stand, where record shows jury was confused as to
    whether or not it must be proved that the crime took place
    on date specified in the information and instructions given
    jury upon return to courtroom for additional instructions did
    not eliminate the confusion (CLS 1961, § 750.520).

2. SAME—MEDICAL TESTIMONY—REBUTTAL.
    The introduction of medical testimony by the prosecution for
    statutory rape to corroborate testimony of prosecutrix that
    she had had sexual relations with defendant constitutes an
    admission by the prosecutor to the court that neither the
    prosecutrix nor the people will object to rebuttal proof on
    the grounds of qualified privilege (CLS 1961, § 750.520).

3. SAME—RES GESTAE WITNESS—INDORSEMENT OF NAME ON INFOR-
    MATION.
    It was reversible error to fail to indorse on information the
    name of third person who was named by prosecutrix as being
    present when she first had relations with defendant charged
    with statutory rape (CLS 1961, § 750.520).

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur, Indictment and Information § 181.
[2] 58 Am Jur, Witnesses § 418.
[3, 4] 58 Am Jur, Witnesses § 111.
    27 Am Jur, Indictments and Information § 43.

4. CRIMINAL LAW—RES GESTAE WITNESS.
    The name of a *res gestae* witness should be indorsed on infor-
    mation in prosecution for crime.

Appeal from Recorder's Court for Detroit; O'Hara
(John P.), J. Submitted October 6, 1964. (Calendar
No. 5, Docket No. 50,348.) Decided January 4, 1965.

Clayton Bruce Hunter was convicted of statutory
rape. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *James R.
Ramsey,* Acting Solicitor General, *Samuel H. Olsen,*
Prosecuting Attorney, *Samuel J. Torina* and *James
E. Lacey,* Assistant Prosecuting Attorneys, for the
people.

*Weller, Summer & Feder (Albert Summer,* of
counsel), for defendant.

KELLY, J. Defendant-appellant, Clayton Bruce
Hunter, was charged in an information filed in the
recorder's court for the city of Detroit with having
on or about August 9, 1962, committed the crime
of carnal knowledge upon Jeanne,[1] a female child
under the age of 16 years, to-wit: 14 years.[2]

After hearing testimony of 12 witnesses during a
9-day trial, a jury found defendant guilty.

A review of the testimony is not necessary for
this opinion and would not be of assistance to bench
and bar. The decision on this appeal is based on
the answers to appellant's questions 1, 2, and 3.

*Question 1:* "Where defendant is charged in an
information with having committed crime of statu-
tory rape on or about August 9, 1962, and the exact
day is fixed by the testimony, and the people have

[1] The surname is purposely deleted to save identity.
[2] See CLS 1961, § 750.520 (Stat Ann 1954 Rev § 28.788).—RE-
PORTER.

been permitted to show other similar acts to show the relationship of the parties, is it not improper for the court to instruct the jury, in answer to a request by a juror, that they were not bound by the day fixed by the testimony?"

During the second day of deliberation the jury sought help by sending to the court the following note: "Is Mr. Hunter being accused of this crime having taken place on the night aunty (defendant's aunt, Mrs. Mager) came to town or on or about August 9th."

The court refused to answer the jury's question, informing them that if he did so he would be trespassing upon their function to interpret the testimony and when the court asked: "Now, does that satisfy the members of the jury?" the following occurred:

"*A Juror:* We want to know if he is being charged with the action taking place that would—through testimony—on a particular night. Now, we know it was on or about that time, but does it take in more than one night or on the night that it was established this action took place?

"*The Court:* I don't know how to answer that question without getting myself in the middle and interpreting the testimony for you.

"*A Juror:* Because the testimony was that this action took place the night that the aunt came from Florida and was picked up at the airport and brought home. It was established that that was the night that the action took place. Is that what we are supposed to judge on?

"*The Court:* Well, again, you are asking me to interpret the testimony for you. I cannot do that. I don't think, from what you say, that you are confused about the testimony but it is up to you to interpret what the testimony means and I couldn't do it for you.

"*A Juror:* The difference came about because in the information it had not been determined what the date was and so it was established as on or about, but not a specific date. Then, testimony went on to say that it was a particular date.

"*The Court:* Well, that is something for you to determine as jurors. Well, I think I will have to leave it right where it is. So you may return to the jury room."

After the jury returned to the jury room, the assistant prosecuting attorney informed the court that he believed the jury was confused; and defense counsel told the court he should have answered "Yes" to the jury's original question because if any crime was proved it had to be the crime that was committed on the night that defendant's aunt came the town.

The court then recalled the jury and instructed them as follows:

"Now, members of the jury, since you were here in the courtroom a short time ago, I have been thinking about this situation and discussing it, and have come to the conclusion that I ought to say something further about the law.

"It is charged in the information that this act occurred on or about the 9th day of August, 1962. Now, that isn't something that must be positively proved. It might have occurred on the 8th, 7th, or the 6th, but if you find or if you are convinced beyond a reasonable doubt that the defendant had intercourse with Jeanne * * * on or about the 9th day of August, even though you conclude that it wasn't the 9th but it might have been the 7th or the 6th, then, if you are convinced beyond a reasonable doubt of it, you could find the defendant guilty; and if you were not convinced beyond a reasonable doubt of it, why it would be your obligation to find him not guilty.

"What I wanted to say to you is that the fixing of a date, as was fixed here, doesn't mean that it must positively be proven that it happened on that date. If you are convinced beyond a reasonable doubt that he did have intercourse with her and it was on or about that date, then, if you were convinced beyond a reasonable doubt of it you would be justified in finding him guilty. If you were not convinced beyond a reasonable doubt then you couldn't find him guilty or shouldn't find him guilty.

"Now, that enlargens somewhat on what was said before and it might help you. So I am going to ask you to go back to your jury room and see whether that has any enlightening effect upon you, and if it doesn't I would like to have you let me know."

One hour after the jury returned to the jury room they returned with a verdict of guilty against defendant.

We agree with appellee's statement that the jury was confused as they returned to the jury room after the court refused to answer their question, and conclude the court's subsequent instruction did not eliminate that confusion. We cannot approve a verdict of guilty brought in under such confused circumstances.

Counsel for the people must share responsibility with the court for this reversible error because if counsel had made known to the trial court, as he now admits in the brief filed with this Court, that the convicting testimony, if any, referred to the day that defendant's aunt visited him, this confusion would probably have been eliminated.

*Question 2:* "Where medical testimony was offered by the people to support and corroborate claim of prosecutrix that she had sexual relations with the defendant, did not the introduction of such testimony without objection from her, waive her right of privilege to object to testimony from another physician offered by the defense for the purpose of

establishing the existence of the same physical condition prior to her claimed relationship with the defendant?"

Jeanne testified she was a virgin prior to her several relations with the defendant, and, while admitting that she had sought medical aid and assistance from Dr. Prisbie on several occasions, she was positive that the doctor had never given her a vaginal examination.

People's witness Dr. Carol Platz testified that she examined Jeanne on August 21, 1962; that this examination disclosed she had a marital type hymen but she (Dr. Platz) could not tell how long the condition had existed.

Defense counsel called to the stand Dr. Prisbie for the purpose of showing the results of an examination he made of Jeanne that would disclose she was not a virgin four months prior to the time of the alleged offense. Counsel for the people objected to his testifying on the ground that Jeanne had not waived her rights to claim a privileged communication.[3]

After counsel for the defense called to the court's attention the fact that when Jeanne testified she had stated that she had no objection to Dr. Prisbie testifying, the court requested people's counsel, Jeanne, and her mother, to hold a conference, which, after same was concluded, resulted in counsel for the people returning to the courtroom and informing the court as follows:

"Your Honor, I have discussed this matter with the mother and the victim and they inform me that they wish to exercise her privilege which they have, not to have Dr. Prisbie testify. Not because they desire to withhold the truth but they feel because

[3] See CLS 1961, § 600.2157 (Stat Ann 1962 Rev § 27A.2157).—
Reporter.

Dr. Prisbie has had such a close relationship with the defendant that they are fearful of his testimony at this time. They have heard other witnesses testify so far in this court and they have lost their confidence in certain friends of the defendant."

Lengthy argument before the court, without the jury, was interrupted by the following statements of counsel for the people and Dr. Prisbie:

"*Mr. Koscinski:* I think the record should show that Dr. Prisbie would refuse to testify at this time unless he was specifically requested to do so; is that correct?

"*A.* (By Dr. Prisbie): I will not testify unless I am ordered to by the court."

The court sustained the people's objection to Dr. Prisbie's testifying as to what conditions he found when he examined Jeanne approximately four months before the alleged offense and when defendant requested he be given the opportunity to offer proof on a separate record the court denied such request, stating:

"I think if you appeal the materiality of your testimony will be right on the record because you stated what Dr. Prisbie would testify to, and I don't think that in a criminal case it is permissible to make separate records."

Appellant calls attention to the fact that the privilege, if any, is one that is for the patient and not for the doctor,[4] and quotes *People* v. *Kayne,* 268 Mich 186, 190, as follows:

"At the trial Mrs. Bluestein voluntarily testified in behalf of the people and in accordance with their theory of the case, having waived any right she might have asserted as to self-incrimination.

---

[4] *Lincoln* v. *City of Detroit,* 101 Mich 245; 8 Wigmore on Evidence (McNaughton Rev), § 2386, p 851.

Having so testified, she waived the right to assert a claim of privileged communication as against testimony that might be given by Dr. Atler. *Hamilton* v. *People,* 29 Mich 173; *People* v. *Van Alstine,* 57 Mich 69; *People* v. *Gallagher,* 75 Mich 512."

Defense counsel also calls attention to 1 Gillespie's Michigan Criminal Law and Procedure (2d ed), § 440, p 545, as follows:

"Where testimony as to the conditions of the sexual organs of the girl, indicating that she has had sexual intercourse with someone, is introduced as corroborative of her testimony, she may be examined as to her relations with other men and the defendant should be permitted to establish, either by direct or circumstantial evidence, that someone other than himself may have been responsible for her condition." (Citing *People* v. *Werner,* 221 Mich 123; *People* v. *Keller,* 227 Mich 520; *People* v. *Russell,* 241 Mich 125.)

Appellee admits that in *People* v. *Keller,* 227 Mich 520, a case existed where a father was charged with statutory rape of his 13-year-old daughter and a doctor testified that his examination indicated sexual intercourse had occurred, that this Court held that the trial court erred in refusing to permit defense counsel to elicit answers from the victim's sister that her sister had had previous sexual intercourse with other people; and that in *People* v. *Russell,* 241 Mich 125, it was held that other acts of intercourse, or circumstances where intercourse could reasonably be inferred, were admissible in evidence to show that the physical condition of the prosecutrix could have been caused by someone else other than the defendant, but contends that these cases are not applicable because the question of privileged communication was not presented or decided therein. Counsel answers defendant in regard to *People* v.

*Werner,* 221 Mich 123, by stating, "a physician testified in behalf of the people in corroboration of the prosecutrix's testimony that there was found a marital outlet. The essence of the ruling in that case was that specific acts of intercourse with others were permitted to be shown to rebut the corroborating circumstances of the doctor's testimony. However, the situation does not concern itself with a patient-physician privilege and it cannot be confused with that situation."

Appellee does not dispute that the privilege belongs to the patient and not the doctor and that it must be timely asserted, but claims: "In the instant case, the claim of privilege was timely asserted by the patient, Jeanne, * * * after consultation between her mother and assistant prosecuting attorney Arthur R. Koscinski."

In holding that reversible error was committed in denying defendant the right to introduce Dr. Prisbie's testimony, we want to make it clear that upon retrial in this case, and in all cases in the future when under similar circumstances the people offer similar proof, it will constitute an admission by counsel for the people to the court that neither the prosecutrix or the people will object to rebuttal proof on the grounds of qualified privilege.

*Question 3:* "Did not the trial court err in refusing to compel the State to indorse as a *res gestae* witness one * * * [a certain girl friend of Jeanne's]?"[5]

Jeanne testified that her girl friend was present the first time she had relations with defendant. It is not necessary to review the argument presented by appellant and appellee as to whether error was committed by not indorsing the girl friend at the

---

[5] Name eliminated to save identity.

trial. Sufficient to say, she should be indorsed on retrial.

Reversed and remanded for new trial.

KAVANAGH, C. J., and DETHMERS, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with KELLY, J.

BLACK, J., concurred in result.