**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Walter John HENDERSON, Defendant-Appellant.**

**No. 19725.**

United States Court of Appeals, Sixth Circuit.

Nov. 10, 1970.

Granville H. Bradley, Jr. (Court appointed), Cleveland, Ohio, for defendant-appellant.

Jack B. Streepy, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Robert B. Krupansky, U. S. Atty., Cleveland, Ohio, on brief.

Before EDWARDS and BROOKS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

We consider the appeal of Walter John Henderson from his conviction upon jury trial of two counts of an indictment charging him with violation of 18 U.S.C. § 1952, the so-called Travel Act, and § 2421, viz., the interstate transportation of a woman for the purpose of having her engage in prostitution. It was charged that Henderson, for such purpose, transported a Mary Louise Miles, a long time prostitute, from Cleveland, Ohio, to Louisville, Kentucky, "on or about the 5th day of October, 1965." Henderson received a five year sentence on each count, such sentences to run concurrently.

In his statement of questions involved, appellant charges the following:

*First,* that the indictment was defective because it did not set out the number and section of the Kentucky statute which made the business of prostitution an unlawful activity. The indictment set out the federal statutes al-

legedly violated, to wit: 18 U.S.C. Sections 1952 and 2421. It then set out that the interstate travel was undertaken,

> "to promote, manage * * * carry on * * * an unlawful activity * * * being a business enterprise involving prostitution in violation of the laws of the State of Kentucky * * *."

and that the woman named was transported to Louisville, Kentucky, "for the purpose of prostitution." Appellant made no request for a bill of particulars. We find no merit to this assignment. Fed.R.Crim.P. 7(c).

■ *Second,* that no conviction could be sustained because there was evidence that the illegal travel and transportation as charged,

> "was physically impossible because the woman was regularly employed and working in Cleveland during the same hours that she was supposed to have been in Louisville, Kentucky."

There was defense evidence that the transported woman was working in Cleveland at the time she was alleged to have been transported to Louisville. This merely created an issue of fact for resolution by the jury. The point is without validity.

■ *Third,* that the District Judge erred in giving the following instruction to the jury:

> "Although Count One of the indictment alleges that the defendant travelled in interstate commerce on or about October 5, 1965, it is not necessary for the Government to prove that he travelled on that exact date. Under an indictment which alleges that a given event transpired on or about a particular date the Government will satisfy its burden of proof if it establishes beyond a reasonable doubt that the event happened during a period of time reasonably related to the date alleged in the indictment. The Government's burden is to prove that the event occurred, and a variance between the date alleged in the indict-

ment and the evidence in the trial is not fatal to the Government's case, so long as such variance is not too extreme and does not result in an actual prejudice to the defendant."

and in repeating several times that the government's burden would be met if the travel and transportation took place "on a date reasonably related to October 5, 1965." Defense counsel made timely objection to the giving of such instruction. Under the special facts of this case we consider that this was error and requires a new trial. To elucidate the basis for our holding as well as our belief as to the possible effect of the foregoing instruction upon the jury, a rather extensive review of the evidence is required.

At trial, the prosecution, for its proof of the transportation, relied solely on the testimony of Mary Louise Miles, who said that appellant did on the date charged drive her in a 1963 Cadillac from Cleveland, Ohio, to Louisville, Kentucky, arriving there at about 3:00 A.M. She said that she went at once to her sister's house and was already working at her trade of prostitution by nightfall of the same day; that upon arrival, she contacted a man she had known during her previous activities as a prostitute in Louisville; that this man was the proprietor of an establishment called the 4-Aces Club at which "girls, gambling and alcohol" were available to its patrons; that she became the manager of the club—a working manager—personally filling "prostitution dates"; that the revenue from her own prostitution was received and kept by her, over and above her salary as manager.

Mary Louise Miles, 39 years old at the time of trial in 1969, had engaged in prostitution in her native city of Louisville from 1950 to 1955 and from 1955 to 1959 was similarly occupied in Fort Wayne, Indiana. She testified that from 1959 to 1964 she ceased such activity and worked first as a nurse's assistant at a Cleveland hospital and then at a General Electric plant in the environs of Cleveland. On June 2, 1965,

while working in this last employment, she met appellant Henderson and thereafter saw him frequently. Soon he began suggesting that she was too good looking to carry a lunch basket, and that it would be more becoming and more lucrative for her to return to prostitution, suggesting that she do so in Cleveland. She refused to work in Cleveland and, as her own choice, decided to take up prostitution in Louisville. Before leaving Cleveland she quite obviously got in touch with old Louisville contacts and made ready to promptly resume her career at the place where it began.

Questioned closely on the subject, she insisted that although Henderson importuned her to reenter prostitution, it was her idea that she go to Louisville to do so. She had several sisters there, as were her mother and father. She does not describe Henderson as participating in her getting set up at the 4-Aces Club, and except for insisting that he drove her to Louisville, she gave no account of his activities there nor of the time or circumstances of his leaving. She testified that Henderson was her pimp and that for some 23 months she sent him money from Louisville. She partially supported these statements with record evidence.

Mary Miles had two children born of a marriage which had ended in divorce. These young people remained in Cleveland and were, at frequent intervals, confined in reformatories or other like institutions. It was Mrs. Miles' testimony that it was part of Henderson's duties as her pimp to see to the welfare of these children and to care for the house where they lived while she carried on in Louisville. She testified that Henderson failed to carry out this part of the bargain, but kept the money she sent to him. She continued, however, to send money to him. It will be sufficient to say that Mrs. Miles testified that she began her service for Henderson in 1965 and continued to send him money into 1967. She said that at the time of a visit by her to Cleveland at Thanksgiving time in 1966, she and Henderson had a serious quarrel. She returned to Louisville, however, and continued to send him money. In the summer of 1967, she returned to Cleveland and had a final quarrel with Henderson over her claim that he was trying to persuade her daughter to enter prostitution. Thereafter she went to the FBI for the reason, as she said, "I made this complaint because I think justice should be done." The record does not tell us when, after making the complaint against Henderson, she returned to Louisville, but at the time of trial she was there carrying on her trade of prostitution.

Henderson took the stand and denied that he transported Mrs. Miles to Louisville on October 5, 1965, or at any other time. He denied that he was a pimp for her or any other person, describing himself as a small-time gambler, working at a quite shady establishment in Cleveland. He told of meeting Mrs. Miles in 1965 and that whatever their relationship, it ended in 1967 when, as claimed by him, Mrs. Miles wanted him to marry her. He testified that upon his expressed reluctance to do so, she threatened him, saying, among other remarks, "If I go to the FBI and told them you transported me to Kentucky, you are going to the penitentiary." Persisting in his refusal, their relationship, whatever it was, ended with her threat, "If we are not married by Thanksgiving, get ready for the penitentiary."

There was quite sufficient evidence that Henderson was the complaining witness' pimp as he was for other women. He had served a prison term for receiving stolen goods and was generally a disreputable character, and so were the people with whom he spent his time. The crime charged to him, however, was not that he was a pimp or otherwise a filthy character, but that on October 5, 1965, he transported Mary Miles from Cleveland to Louisville so that she could engage in prostitution. There was evidence from which the jury could find that he induced Mary Miles to resume prostitution and that he received substantial parts of her earnings as such.

We need not give attention to his dubious explanation of the reasons for his receiving large amounts of money from her.

Defendant put in evidence employment records of the General Electric Company plant at Nela Park, in the environs of Cleveland. These established that Mary Miles was working there on the day she contended that appellant conveyed her to Louisville. The probative value of these records was unimpeached. These records showed that on the 5th day of October, 1965, and on every other day but one in October through the 28th thereof, which was the last day of her employment, Mrs. Miles worked the second shift from about 3:00 P.M. to midnight. Following the work day of October 5, she punched out at 12:13 A.M., on October 6.

This completely credible evidence raised a clear issue of fact as to the truth of her claim that she was transported to Kentucky on October 5 by appellant. After this evidence was received, the government made no attempt to explain its collision with that of the complaining witness. Mrs. Miles did not resume the stand to suggest that she could have been wrong and that the date of her transportation to Kentucky might have been on a date after she quit her employment at General Electric on October 28. If such had been the case, the variance between October 5 and some date after October 28 would not have seriously impaired the government's case. However, the government's case as made presented no variance from the charge of the indictment. An instruction on variance was not needed or warranted. A clear issue of fact was made by the government's proof and that of the defendant opposing it. Defendant was entitled to have the jury resolve such issue.

The District Judge instructed the jury that the government's burden would be met if the critical event—the transportation—happened during a period of time *reasonably related* to the date alleged in the indictment. The government's proof, however, conforming strictly to the indictment, was that Mrs. Miles was transported on October 5. Faced with General Electric's unimpeached records, the prosecution made no attempt to show that Mrs. Miles could be wrong on her dates, but right on the fact of her transportation at a date "reasonably related" to October 5. The defense was entitled to meet the government's proofs with contrary proof which might persuade the jury that the trip to Kentucky did not happen at all. We consider that the Court's instruction was calculated to foreclose that possibility.

The government's brief to us says:

"Defendant makes the fatal assumption that the jury was forced to accept the hearsay business records over Mary's direct testimony. Introduction of business records is an exception to the hearsay rule. Hoffman v. Palmer, 129 F.2d 976 (2d Cir., 1942), aff'd 318 U.S. 109 [63 S.Ct. 477, 87 L.Ed. 645]. Despite the hearsay aspect to defendant's evidence, *defendant chose to rely wholly upon such dubious evidence* rather than call employees who worked with Mary and who could testify directly concerning the dates Mary worked. (Emphasis supplied.)

"Thus the jury was confronted with a choice between direct evidence and uncorroborated hearsay evidence. Construing the evidence most favorably to the Government (*Glasser* and *Jacobs*, supra) the jury obviously chose to believe Mary's testimony."

There was nothing "dubious" about these properly identified records; they did not need corroboration. When, as in this case, the authenticity of such records is unquestioned, they may, indeed, constitute the most trustworthy kind of evidence. The prosecution was free to attack their reliability, but did not. Unimpeached, Henderson's record evidence had strong probative value vis-a-vis the prosecution's charge and proofs. The jury should have been free to give it

such weight as in their judgment they felt it deserved.

The District Judge's accused instruction was a correct statement of the rule that applies when there is a variance between an indictment's charge and the evidence offered to prove it.[1] Here there was no such variance and the Court's charge, in effect, wiped out the probative value of the defendant's clear evidence that the alleged crime could not have occurred on the date set out in the indictment and solely relied on in the proofs.

Neither the brief for appellant nor that of appellee discloses any relevant research on the matter under consideration. While we are satisfied that the special facts of this case require the decision we make, our own research provides some state law supportive of it. In the case of People v. Brocato, 17 Mich.App. 277, 169 N.W.2d 483 (1969), a defendant was charged with having committed the crime of taking indecent liberties with a young woman. As here, the indictment charged that the offense was committed "on or about" a certain date. All of the evidence, including the positive insistence of the complaining witness, was that it happened on the date set out in the indictment. After commencing their deliberations, the jury made some inquiry about the date of the alleged crime. The judge then gave the jury an instruction which included:

"If you would find in this case, and there is some evidence to support that, * * * if you would find that it occurred on some other date and you can substantiate that finding, and you find all the other elements, then, it wouldn't matter if it happened on some other date." 17 Mich.App. 287, 169 N.W.2d 487.

The Michigan Court of Appeals held the instruction improper, saying:

"To repeat, as the trial judge did, that time is not of the essence did not respond to the point raised by the jury, *i.e.*, to convict must they confine their deliberations to whether the alleged offense occurred on September 28. Based on all the testimony at trial they should have been so confined in clear instructions, People v. Hunter (1965), 374 Mich. 129, 132 N.W.2d 95. *Cf.* People v. King (1962), 365 Mich. 543, 114 N.W.2d 219.

" 'It is well settled that the prosecution is entitled to some latitude in fixing the date, but, having once identified and selected a particular transaction, it must then stand or fall by the election.' 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 349.

"The instruction allowed the jury to find that the offense occurred on some date other than September 28, when in fact there was nothing in the record to support such a finding. This was particularly prejudicial here. because the defendant and three of his witnesses were able to account for his activities on the evening in question with testimony in the nature of alibi." 17 Mich.App. at 287–288, 169 N.W.2d at 488.

We consider that the above language fits, and supports the holding we make. Without recitation of their special facts, we consider that the following also disclose sufficient analogy to cite them. People v. King, 365 Mich. 543, 114 N.W. 2d 219 (1962); People v. Eldridge, 17 Mich.App. 306, 309–310, 169 N.W.2d 497 (1969); *cf.* People v. Hunter, 374 Mich. 129, 132 N.W.2d 95 (1965).

The actors in this contest are quite unlovely and the business of each of

1. The charge was patterned upon one set out in Judge Mathes' Jury Instructions and Forms for Criminal Cases, No. 5.02, 27 F.R.D. 39, 88 (1961):
"You will note the indictment-information charges that the offense was committed 'on or about' a certain date.

It is not necessary that the proof establish with certainty the exact date of the alleged offense. It is sufficient if the evidence shows beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged."

them thoroughly sordid and degrading, but the defendant was not charged or being tried for being a pimp, or a low and despicable person. He was not being tried as an accessory to the complaining witness' prostitution. The jury had to choose between the prosecution's evidence that Henderson had transported his prostitute to Louisville on October 5 and Henderson's insistence that not only did he not transport her on the day she claimed, but had never done so. The federal government's case depends upon establishing that the defendant offended a special federal statute in the manner charged. Absent the Court's accused instruction, a sophisticated jury might have found that the government had not proved its case. We regret the need to reverse but feel that the learned District Judge unwittingly gave an instruction that deprived the defendant of a fair trial. We are unable to say that the quoted instruction was harmless error.

The judgment is vacated and the cause remanded for a new trial.

EDWARDS, Circuit Judge (dissenting).

Respectfully, I dissent.

This record, as the majority seems to agree, did present a jury question. If so, on appeal from a jury verdict of guilty, we are required to review the evidence from the point of view most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1941).

The disputed date (alleged in the indictment to have been "on or about October 5, 1965") was not a material element of the offense itself. Stewart v. United States, 395 F.2d 484, 488 (8th Cir. 1968).

The District Judge's instruction that the government did not have to prove "that exact date" is supported by good authority. Ledbetter v. United States, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed.

1162 (1898); Mathes, Jury Instructions and Forms § 5.02, 27 F.R.D. 39, 88.

I do not think the charge constituted reversible error.