772 F.2d 909
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
VICTOR VAL NEUROTH, DEFENDANT-APPELLANT.
 NO. 84-3756
 United States Court of Appeals, Sixth Circuit.
 8/12/85
 
 N.D.Ohio
 REVERSED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: MARTIN, CONTIE, and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Victor Neuroth appeals from his jury conviction on one count of distributing the drug LSD in violation of 21 U.S.C. Sec. 841(a)(1). Neuroth complains of an improper jury instruction and asserts several other claims of error. We reverse the judgment of conviction.
 
 
 2
 On August 6, 1983, Lori Balough talked with Neuroth about drugs, and Neueroth told her that he could obtain a large quantity of LSD. Balough then told her friend, Paula Wilson, about Neuroth's access to drugs. Wilson told Balough that she had a friend, Eddie Young, whom they did not then know was an Ohio undercover narcotics investigator, who wanted to purchase a large quantity of 'acid.' Balough then met with Neuroth and told him that she had a friend who wanted to purchase acid. Neuroth said he would 'put them on order.'
 
 
 3
 Wilson arranged for Young to meet with Balough on August 8, 1983. At that meeting, which was also attended by James Corica, Balough offered to sell 1,000 'hits' of acid to Young. Corica set the price at $1,000.
 
 
 4
 On August 14, 1983, Corica, who was employed by Neuroth selling tickets to a travelling circus, notified Balough that the drugs had arrived. Balough went to her trailer, where, in Corica's presence, Neuroth handed her a baggie full of LSD.
 
 
 5
 On August 15, 1983, Agent Young contacted Wilson and was told by her that Balough would come to Wilson's house will the drugs. Young went to the house, and when it became evident that the drugs were on the premises he arrested the women and seized the drugs. On the day of her arrest, Balough identified Neuroth as her 'source.' Balough, Wilson, and Corica cooperated with Ohio authorities and Neuroth was apprehended.
 
 
 6
 On appeal Neuroth raises several claims of error, only one of which we need address because it alone requires reversal. The indictment in this case charged in full:
 
 
 7
 On or about the 14th day of August, 1983, in the Northern District of Ohio, Eastern Division, VICTOR V. NEUROTH did knowingly and intentionally distribute approximately 1500 unit doses of lysergic acid diethylamide (LSD), a schedule I non-narcotic drug controlled substance; in violation of Title 21, Section 841(a)(1), United States Code.
 
 
 8
 At trial the government adduced evidence that tended to show that on August 14, 1983 Neuroth distributed LSD to Balough at her trailer. Corica testified that on August 14 he was present in the trailer when Neuroth delivered the drugs to Balough. Balough also testified that Neuroth delivered the drugs to her in her trailer at approximately 1:30 p.m. on August 14. The government presented absolutely no evidence that the delivery of drugs from Neuroth to Balough occurred on any date other than August 14, 1983, although evidence was presented to show that Balough and Wilson were prepared to deliver the drugs to Agent Young on August 15, 1983.
 
 
 9
 Neuroth presented an alibi defense. His wife testified that Neuroth was with her the entire day on August 14, 1983, and that they did not see Balough or Corica at any time during the course of the day. She stated that she and Neuroth awoke at approximately 9:30 a.m. and then went to a fish fry with some friends and did not return home until approximately 10:30 p.m. that evening.
 
 
 10
 At Neuroth's request, the trial court instructed the jury that
 
 
 11
 The defendant has introduced evidence of an alibi through witnesses ho testified that he was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment.
 
 
 12
 If, after consideration of all the evidence in the case, you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, you must acquit him.
 
 
 13
 Over Neuroth's objection, the court also gave the following instruction:
 
 
 14
 You will not the indictment charges that the offense was committed 'on or about' a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.
 
 
 15
 Neuroth contends that the 'on or about' instruction was prejudicial to him because all of the government's proofs were directed to a specific date and he presented an alibi defense for that date. Under these circumstances, Neuroth asserts, the 'on or about' instruction encouraged the jury to speculate that the offense might have occurred on a date other than August 14, even though the government produced no evidence of a distribution from Neuroth to Balough on any other date.
 
 
 16
 Were we writing on a clean slate, we would have no difficulty in concluding that Neuroth's claim is without merit. If the jury believed that the offense was committed on August 14 and they also believed Neuroth's alibi, they were under instructions to acquit him. If the jury concluded that the offense occurred on a date other than August 14, the effect of Neuroth's alibi was negated even if it was believed by the jury. As Neuroth himself points out, however, the government's evidence demonstrated that if Neuroth committed the offense he committed it on August 14. Although proof of the date on which a crime is committed is not an element of the offense, see Ledbetter v. United States, 170 U.S. 606, 612 (1898), an event must nevertheless occur on some date. When, as in this case, all of the government's proof points to one specific date, the jury may not believe the defendant's alibi for that date and still render a guilty verdict unless they find a fact--the date of the offense--for which there is no support in the evidence. The danger that the jury will make unsupported findings of fact is one which exists in every case. An instruction that the jury may render a guilty verdict only if they find that the offense occurred on the only date for which there is any evidence cannot ameliorate that danger.[1] In other words, an 'on or about' instruction may be superfluous, but it cannot be prejudicial. We therefore would join the other courts that have concluded that an 'on or about' instruction is not prejudicial in these circumstances. See United States v. Creamer, 721 F.2d 342, 344 (11th Cir. 1983); United States v. King, 703 F.2d 119, 123-25 (5th Cir.), cert. denied, 104 S. Ct. 127, 148, 179 (1983); United States v. Lucero, 601 F.2d 1147, 1150 (10th Cir. 1979); see also United States v. Young, 618 F.2d 1281, 1289 (8th Cir.), cert. denied, 449 U.S. 844 (1980).
 
 
 17
 This Court has previously spoken on this issue, however, and we are not at liberty to disregard that holding. In United States v. Henderson, 434 F.2d 84 (6th Cir. 1970), a defendant who was charged with transporting a woman across state lines for the purpose of promoting prostitution 'on or about October 5, 1965' objected to an 'on or about' instruction because all of the government's proof pointed to October 5 and he produced alibi evidence for that date. This Court reversed the conviction, reasoning that 'the Court's charge, in effect, wiped out the probative value of the defendant's clear evidence that the alleged crime could not have occurred on the date set out in the indictment and solely relied on in the proofs.' Id. at 89. The government has suggested no basis for distinguishing Henderson, and we can think of none.
 
 
 18
 Accordingly, the judgment is reversed.
 
 
 
 [1]
 The point can be emphasized by example. The identity of the person to whom the drugs were distributed is not an element of the offense, but the jury must find that the accused distributed drugs to someone. The evidence in this case tended to show that Neuroth distributed drugs only to Balough and Corica. The danger exists, however, that the jury did not believe that Neuroth distributed drugs to Balough and Corica but nevertheless rendered a guilty verdict because they believed that Neuroth distributed drugs to the Man in the Moon. The danger that the jury would make an unsupported finding with respect to the identity of the distributee is no less than the danger that the jury would make a similarly unsupported finding with respect to the date of the offense. Yet Neuroth surely was not entitled to an instruction that he should be acquitted unless the jury should find that he distributed drugs to Balough and Corica