**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Victor Val NEUROTH,
Defendant-Appellant.**

No. 84–3756.

United States Court of Appeals,
Sixth Circuit.

Reheard June 4, 1986.

Decided Jan. 23, 1987.

Randolph Baxter, Asst. U.S. Atty., Chief, Appellate Litigation Div., Cleveland, Ohio, Matt Cain, argued, Ron Bakeman, Gregory Sasse, for plaintiff-appellee.

Donald N. Krosin, argued, Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before LIVELY, Chief Judge, and ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE,* KRUPANSKY, WELLFORD, GUY,

* The Honorable Leroy J. Contie became Senior Circuit Judge July 1, 1986.

NELSON, RYAN and BOGGS, Circuit Judges.

KEITH, Circuit Judge:

Defendant-appellant, Victor Neuroth, appealed his jury conviction on one count of distributing the drug LSD in violation of 21 U.S.C. § 841(a)(1). A unanimous panel below reversed the conviction, 772 F.2d 909 (5th Cir.1985), relying on *United States v. Henderson,* 434 F.2d 84 (6th Cir.1970), which the panel construed to prohibit an "on or about" jury instruction when the defendant has an alibi defense for a specific date, and the government's proof points to that specific date. Although defendant raised other issues besides the propriety of the jury charge in his appeal, we find them meritless, warranting no discussion here. This case was reheard by the court sitting *en banc,* to reconsider the propriety of *Henderson* and the standard of review for "on or about" jury instructions when an alibi defense is provided. We now affirm the conviction below, thereby limiting *Henderson* so that there should be no *per se* prohibition on "on or about" jury instructions because an alibi defense is provided for a specific date.

## I.

On August 6, 1983, Lori Balough talked with Neuroth about drugs, and Neuroth told her that he could obtain a large quantity of LSD. Balough then told her friend, Paula Wilson, about Neuroth's access to drugs. Wilson told Balough that she had a friend, Eddie Young, whom they did not then know was an Ohio undercover narcotics investigator, who wanted to purchase a large quantity of "acid." Balough then met with Neuroth and told him that she had a friend who wanted to purchase acid. Neuroth said he would "put them on order."

Wilson arranged for Young to meet with Balough on August 8, 1983. At that meeting, which was also attended by James Corica, Balough offered to sell 1,000 "hits" of acid to Young. Corica set the price at $1,000.

On August 14, 1983, Corica, who was employed by Neuroth selling tickets to a travelling circus, notified Balough that the drugs had arrived. Balough went to her trailer, where, in Corica's presence, Neuroth handed her a baggie full of LSD.

On August 15, 1983, Agent Young contacted Wilson and was told by her that Balough would come to Wilson's house with the drugs. Young went to the house, and when it became evident that the drugs were on the premises he arrested the women and seized the drugs. On the day of her arrest, Balough identified Neuroth as her "source." Balough, Wilson and Corica cooperated with Ohio authorities and Neuroth was apprehended.

The indictment in this case charged in full:

> On or about the 14th day of August 1983, in the Northern District of Ohio, Eastern Division, VICTOR V. NEUROTH did knowingly and intentionally distribute approximately 1500 unit doses of lysergic acid diethylamide (LSD), a schedule I non-narcotic drug controlled substance; in violation of Title 21, Section 841(a)(1), United States Code.

At trial the government adduced evidence that tended to show that on August 14, 1983, Neuroth distributed LSD to Balough at her trailer. Corica testified that on August 14 he was present in the trailer when Neuroth delivered the drugs to Balough. Balough also testified that Neuroth delivered the drugs to her in her trailer at approximately 1:30 p.m. on August 14, 1983. The government presented no evidence that the delivery of drugs from Neuroth to Balough occurred on any date other than August 14, 1983, although evidence was presented to show that Balough and Wilson were prepared to deliver the drugs to Agent Young on August 15, 1983.

Neuroth presented an alibi defense. His wife testified that Neuroth was with her the entire day on August 14, 1983, and that they did not see Balough or Corica at any time during the course of the day. She stated that she and Neuroth awoke at ap-

proximately 9:30 a.m. and then went to a fish fry with some friends and did not return home until approximately 10:30 p.m. that evening.

At Neuroth's request, the trial court instructed the jury that:

The defendant has introduced evidence of an alibi through witnesses who testified that he was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment.

If, after consideration of all the evidence in the case, you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, you must acquit him.

Over Neuroth's objection, the court also gave the following instruction:

You will note the indictment charges that the offense was committed "on or about" a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Neuroth contends that the "on or about" instruction was prejudicial to him because all of the government's proofs were directed to a specific date and he presented an alibi defense for that date. Under these circumstances, Neuroth asserts, the "on or about" instruction encouraged the jury to speculate that the offense might have occurred on a date other than August 14, even though the government produced no evidence of a distribution from Neuroth to Balough on any other date.

## II.

The panel believed it was bound by *Henderson*, and reluctantly reversed the conviction. In *Henderson*, the defendant was convicted of violating statutes proscribing the interstate transportation of a woman for the purpose of having her engage in prostitution. The offense allegedly occurred October 5, 1965. The defendant's alibi was supported by employment records which indicated the prostitute, whom defendant allegedly traveled with on October 5, was legitimately working at a General Electric plant on that date. In *Henderson*, as in this case, the trial judge gave an instruction that the proof necessary to convict need not correspond exactly to the date alleged in the indictment; rather "[t]he Government will satisfy its burden of proof if it establishes beyond a reasonable doubt that the event happened during a period of time reasonably related to the date alleged in the indictment." *Henderson*, 434 F.2d at 86. This instruction was found to be reversible error because the jury charge unfairly undermined defendant's alibi defense, insofar as it gave the jury latitude to speculate as to when the crime occurred. The court emphasized that the authenticity of the alibi defense in *Henderson* was "unquestioned" and that there was no variance between the date in the indictment charged and the evidence offered to prove it. *Id.* at 88–89.

## III.

We do not believe that *Henderson* should be interpreted so broadly as to prohibit an "on or about" jury charge every time there is an alibi defense. Such a broad holding would unduly circumscribe the trial judge's discretion in instructing the jury, considering the myriad factual situations that arise which may necessitate the "on or about" language. Furthermore, we believe—as the panel in *Henderson* apparently did, *See Henderson*, 434 F.2d at 90—that the erroneous giving of an "on or about" instruction should be subject to a harmless error analysis. Such analysis may appropriately be applied in the case of instructions. *Rose v. Clark*, — U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

In determining whether an "on or about" instruction is proper in a particular case, the district court should look at how specifically the government alleges, in its indictment, the date on which the offense occurred, and compare that to the proof at

trial as to what date the offense occurred. If the indictment or the proof points exclusively to a particular date, it would be preferable for the trial judge to avoid the "on or about" language.

The type of crime should also be considered. For instance, with some crimes, such as conspiracy, the proof is often nebulous as to exactly when the crime occurred. "On or about" language would be preferable in such a case, as compared to cases involving more "concrete" crimes, like murder, which are more easily pinpointed in time. Of course, there is no rigid formula for determining whether an "on or about" instruction is permissible. The above factors are offered as guidelines for cases such as this one.

 Even when we determine that the district court committed error in giving an "on or about" instruction, we will subject that decision to a harmless error analysis. An error, not of constitutional dimension, is harmless unless it is more probable than not that the error materially affected the verdict. *United States v. Rasheed*, 663 F.2d 843, 850 (9th Cir.1981), *cert. denied sub nom. Phillips v. United States*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). Such an analysis will focus on the persuasive value of the alibi defense evidence,[1] and the degree to which the evidence pointed to a particular date.[2]

Finally, the overall weight of the evidence indicating guilt should be considered. For instance, when evidence of guilt is overwhelming, an "on or about" charge could be harmless error, even when all the proof is directed to a specific date for which there is an alibi, and there is alibi evidence as to that date.

## IV.

 Applying the above analysis to the instant case, we find the "on or about"

charge to be harmless error. Significantly, defendant's alibi defense was not likely to persuade the jury. It was merely the word of a highly partial witness; defendant's wife. Moreover, the evidence pointing to defendant's guilt was strong, if not overwhelming. Both Corica and Balough testified that defendant delivered the drugs on August 14th. There were also taped conversations, admitted into evidence, which incriminated defendant. We cannot say that the asserted error "more probably than not" affected the verdict in this case. Therefore, such error, if any, was harmless.

## V.

In conclusion, *Henderson* should be limited to the particular facts of that case. The propriety of an "on or about" jury instruction should be evaluated on a case by case basis, subject to a harmless error analysis. We believe the concern that an "on or about" instruction may encourage a jury to speculate wildly as to the commission of a crime on a date not covered by the proof is misplaced. A jury would have no reason to speculate on a date if there was no proof directed thereto. The risk that a jury may make a finding of fact unsupported by the evidence is inherent in every case and cannot be obviated completely by *any* instruction.

Accordingly, the conviction is hereby reinstated.

MERRITT, Circuit Judge, concurring.

I concur in Judge Keith's opinion for the Court. In light of the jury verdict of guilty, the "on or about" instruction could only have been considered by the jury as a factor in its decision if the jury believed the

1. For example, in *Henderson* there was highly persuasive alibi evidence, i.e. actual employee records, whereas in the instant case defendant's wife's alibi testimony, that they were at a fish fry, is far less persuasive. Accordingly, any error in giving an "on or about" instruction when the alibi evidence is weak is more likely to be harmless.

2. The more the evidence all points to a particular date, the less risk there is that the jury was confused or was encouraged to speculate about when the crime occurred, and thus the less likely it is that the error was prejudicial.

defendant's alibi. Contrary to the implicit suggestion in Judge Ryan's dissenting opinion, there is no basis to think that the jury believed the defendant's alibi but convicted the defendant anyway because the jury believed the crime was committed on a date other than August 14. The alibi evidence was extremely weak and the evidence of the defendant's guilt strong.

The only plausible explanation for the jury verdict, in light of the proof, is that the jury disbelieved the alibi. Therefore, under Rule 52(b) the "irregularity" in the trial court's charge must be "disregarded" because it did not "affect substantial rights." There is no point in ordering a new trial in this case because the trial judge said "on or about" rather than "on." The dissent engages in hypertechnical and formalistic reasoning.

RYAN, Circuit Judge, dissenting.

I write to dissent from the Court's decision in this case, and to explain the basis for my disagreement with the Court's reasoning.

While this is indeed a case taken to "reconsider the propriety of [*United States v.*] *Henderson* [434 F.2d 84 (6th Cir.1970)]," it most assuredly is not a case about "the standard of review for 'on or about' jury instructions when an alibi defense is presented." The standard for review of such a case is very clear, and it is the same standard according to which we review the correctness of all jury instructions in criminal cases: whether the court has correctly stated the law in its charge to the jury and, if not, whether the error affected "substantial rights" of the defendant. Fed.R. Crim.P. 52(a).

It is very clear that the district court did not correctly state the law in its instructions to the jury because its "on or about" jury instruction, at the very least, did not address an issue which was supported by the evidence in the case and, at worst, effectively nullified the defendant's alibi defense.

This is a case that asks the question whether in a prosecution, where all of the evidence of the commission of a crime is that it was committed on a single specific date, and the defendant produces evidence of an alibi for that specific date, it is error requiring reversal for the trial court to instruct the jury that it may convict if it finds "the" offense was committed "on or about" that date. It is reversible error, of course, and the authorities are legion. *See, e.g., Spencer v. State,* 24 Ala.App. 140, 131 So. 456 (1930); *People v. Brown,* 186 Cal. App. 2d Supp. 889, 9 Cal.Rptr. 53 (1960); *State v. Abbott,* 65 Kan. 139, 69 P. 160 (Kan.1902); *People v. Brocato,* 17 Mich. App. 277, 169 N.W.2d 483 (1969); *Love v. State,* 142 Miss. 602, 107 So. 667 (1926); *State v. Bowles,* 360 S.W.2d 706 (Mo.1962); *State v. Whittemore,* 255 N.C. 583, 122 S.E.2d 396 (1961); *State v. Waid,* 92 Utah 297, 67 P.2d 647 (1937); *State v. Brown,* 35 Wash.2d 379, 213 P.2d 305 (1950); *Esquibel v. State,* 399 P.2d 395 (Wyo.1965). *But see, e.g., Gravitt v. State,* 220 Ga. 781, 141 S.E.2d 893 (1965); *State v. Rosenberg,* 84 Utah 402, 35 P.2d 1004 (1934); *State v. Arnold,* 130 Wash. 370, 227 P. 505 (1924).

These cases (as well as the instant case) must be distinguished from those involving, not a *coincidence* of indictment date, government's proof date, and alibi date, but a *variance* between the indictment and the government's proof. *See, e.g., Caldwell v. State,* 139 Ga.App. 279, 228 S.E.2d 219 (1976); *Commonwealth v. Boyer,* 216 Pa.Super. 286, 264 A.2d 173 (1970). *Cf. United States v. Goodrich,* 493 F.2d 390 (9th Cir.1974).

**I**

My disagreement with the Court's opinion begins with its declared purpose of "limiting *Henderson* so that there should be no *per se* prohibition on 'on or about' jury instructions because an alibi defense is provided for a specific date." *Henderson* did not state such a *per se* rule, and there is no occasion therefore to limit the holding in that case in the fashion the Court describes. The *Henderson* Court held that, on the facts of that case, essentially the

same "on or about" instruction as is challenged in this case was improper, because such an instruction was

> "a correct statement of the rule that applies when there is a variance between an indictment's charge and the evidence offered to prove it. Here there was no such variance and the Court's charge, in effect, wiped out the probative value of the defendant's clear evidence that the alleged crime could not have occurred on the date set out in the indictment and solely relied on in the proofs."

434 F.2d at 89 (footnote omitted).

Aside from the fact that the holding of *Henderson* was tailored to the facts presented in that case, further indication that the Court was not laying down a *per se* rule, but one reached after a harmless error analysis, is the statement that appears in the penultimate paragraph of the opinion after a detailed recitation of the facts of the case:

> "We regret the need to reverse but feel that the learned District Judge unwittingly gave an instruction that deprived the defendant of a fair trial. We are unable to say that the quoted instruction was harmless error."

434 F.2d at 90.

*Henderson,* therefore, cannot be distinguished as a case laying down a *"per se* prohibition" against "on or about" jury instructions when an alibi defense is presented, and in which the court failed to conduct a harmless error analysis. The *Henderson* Court conducted a harmless error analysis and held that, on the facts there presented, the improper instruction could not be considered harmless.

*Henderson* was simply an enunciation in this circuit, for the first time, of the familiar general rule of law that where there is no variance between the indictment and the proofs, and the proofs demonstrate indisputably that the crime was committed, if at all, on a date certain, and the defendant introduces evidence of alibi for that date, it is improper for the court to instruct the jury that it is free to convict the defendant

by finding that the offense was committed on some other date.

## II

In my judgment, the Court misconceives the nature of the district court's instructional error and the reason the instruction was unfair; it then compounds its error by employing a wholly unsound harmless error analysis.

While the indictment alleged that the offense was committed "on or about" August 14, 1983, the whole of the government's proofs were that the offense was committed, if at all, *only* on August 14, 1983. Similarly, the defendant's alibi evidence was that he was elsewhere on August 14 and could not have committed the only offense for which the government offered any proof.

Until hearing the court's instruction that is challenged here, the jury was forced, as in *Henderson,* to choose between the prosecution's evidence that the defendant had delivered the drugs on August 14, and the defendant's alibi to the effect that he could not have delivered the drugs, because at no time on August 14 was he at the place where the government claimed he personally made the delivery; in fact, he was at another place all day in the company of his wife.

If the jury believed the government's evidence, it must necessarily have rejected the alibi evidence. If it did that, it was free to convict. If, however, it believed the alibi evidence, or even if Neuroth raised a reasonable doubt whether he was at Balough's trailer on August 14, the jury could not have found the government's case to have been proved and was obligated to acquit. And, if it could not make up its mind whom to believe, the jury was obligated to announce its hopeless disagreement and the court would be duty bound to declare a mistrial.

Instead, the district court, in utter disregard of the evidence, told the jurors, in effect, that they were free to convict the defendant, even if they believed his alibi

defense and thus disbelieved the government's evidence, because they were free to "find" that the defendant had delivered the drugs on some date other than August 14, despite the complete absence of proof of any such delivery. That is the only possible purpose for the instruction and the only possible use to which it could have been put by the jury. The instruction was improper for two obvious reasons:

1) It did not address any issue reasonably raised by the evidence in the case because there was no evidence of a delivery on any date other than August 14, and

2) It completely destroyed the defendant's defense. It did not merely denigrate it; it "wiped it out" as the *Henderson* Court put it in that case.

Rather than squarely facing the question whether a conviction may stand that is obtained following an instruction which authorizes the jury to convict the defendant of an offense for which no proof was introduced, this Court tacks away from the issue, holding, in effect, that it does not matter whether the instruction was improper because the jurors paid no attention to the instruction—never used it for its intended purpose—because they did not believe the defendant's alibi evidence, and understandably so, since it was not very believable anyway:

> "Significantly, defendant's alibi defense was not likely to persuade the jury. It was merely the word of a highly partial witness; defendant's wife."

That remarkable observation illuminates the essential flaw in the Court's reasoning in this case.

The Court's position evidently is that the testimony of the defendant's wife was not *credible.* That, understandably, is a very difficult position for the Court to articulate because the credibility of witnesses is a matter exclusively for the jury. But that is indeed the predicate for the Court's analysis, *viz:* the trial judge's erroneous instruction was harmless because the jurors must certainly have totally disregarded it since they did not believe the defendant's defense anyway.

The difficulty with this analysis is that no one, other than the jurors in this case, and least of all the members of this Court, can know whether the jury believed the defendant's alibi witness. More importantly, the Court's analysis does not address the very real possibility that the jurors eagerly obeyed the trial court's erroneous instruction and utilized it for the very purpose for which it was intended—to authorize conviction even if the jurors believed the defendant's alibi witness. That is precisely why the *Henderson* Court held that a harmless error analysis could not save the conviction in that legally indistinguishable case.

Quite aside from the analytical and legal unsoundness of this Court determining whether instructional error is harmless by evaluating the credibility of the witnesses, the Court's analysis is flawed in another respect.

The defendant offered an alibi defense that met directly and narrowly the case presented by the prosecution. One of the reasons, completely overlooked by the Court today, that the challenged instruction was unfair, is that it "sandbagged" the defendant. Having observed that the government's proofs were that he committed the crime at approximately 1:30 p.m. on August 14 at Lori Balough's trailer and at no other time, date, or place, the defendant introduced evidence that he was not at Balough's trailer at any time on that date and therefore could not have committed the crime the government "proved." The trial court then instructed the jury, in effect, and over defendant's objection, that it was quite alright to convict the defendant if it found that he delivered the drugs on some nearby date ("on *or about*") other than August 14.

This Court's analysis overlooks the fact that, had the defendant known that the trial court was going to authorize his conviction for delivering the drugs on August 12 or 13, or August 15 or 16, despite a complete absence of proof, he might have presented an even more persuasive alibi

defense for those dates. As things stood, even if the defendant had the prescience to know that the court was going to nullify his August 14 alibi defense, evidence of an alibi for August 12, 13, 15, or 16 would have been inadmissible because it would have been immaterial to rebut the government's proofs of the "August 14 or not at all" crime.

Instead of addressing these difficult ramifications of the court's erroneous instruction, the Court holds that the instructional error is of no moment because the jurors probably had not believed the alibi and therefore paid no attention to the instruction. That, of course, the judges of this Court simply cannot know.

### III

I cannot share the Court's confidence that the error in this case was harmless. "Harmless-error analysis addresses [the] question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome?" *Rose v. Clark*, 106 S.Ct. 3101, 3108 n. 11, 92 L.Ed.2d 460, 473 n. 11 (1986). The "crucial assumption" underlying the system of trial by jury is "that juries will follow the instructions given them by the trial judge." *Parker v. Randolph*, 442 U.S. 62, 73 (1979) (plurality opinion).

*Henderson* does not preclude a finding of harmless error in a case where an alibi defense was presented and an "on or about" instruction was given. If the government's proofs were not clearly directed to a single day, the instruction would not necessarily be error. *See United States v. Goodrich*, 493 F.2d 390 (9th Cir.1974). If the defendant's alibi extended to all days "on or about" the date named in the indictment, the instruction would presumably be harmless. *See State v. Sills*, 311 N.C. 370, 317 S.E.2d 379 (1984); *State v. Correia*, 106 R.I. 655, 262 A.2d 619 (1970).

In this case, however, the government's proofs were clearly directed to a particular day and time, so the giving of the instruc-tion was, as the Court apparently recognizes, error. In view of the fact that the defendant provided an alibi for that same day, an issue of fact is raised by this record. In the words of *Rose v. Clark*, any instruction that could have been employed by the jury to reach a verdict without resolving this central factual dispute is one which, "in theory, may have altered the basis on which the jury decided the case." 92 L.Ed.2d at 473 n. 11.

To hold that this error, in practice, "clearly had no effect on the outcome," *id.*, the Court must conclude either that there was, in effect, no factual dispute—the alibi was so weak as to be incredible as a matter of law—or that the jury must have discarded or ignored the instruction. I am unwilling to assume that the jury did not follow the instructions in this case. It would "transfer to the jury the judge's function in giving the law" to say "that the lay jury will know enough to disregard the judge's bad law if in fact he misguides them." *Bollenbach v. United States*, 326 U.S. 607, 613–14 (1946). In my judgment, the Court's conclusion that the instructional error was harmless because the jury must have disbelieved the defendant's alibi is unjustified.

That is not a harmless error analysis; it is an appellate guess that the jury must have disbelieved defendant's alibi witness because she was defendant's wife, and that, therefore, nobody on the jury paid any attention to the trial court's invitation to the jurors to convict the defendant of a crime not proved.

This Court, amassed en banc, surely has the power to make that guess. I think it does not have the authority to do so.

In truth, the Court cannot say, indeed no one can say, whether the jurors convicted the defendant despite believing that he committed no crime whatever on August 14, and despite the absence of any evidence of his guilt of any crime on any other date, simply because the trial court invited them to do so.

## IV

Finally, I must disassociate myself from the Court's denigration of the defendant's alibi defense for another reason. Quite aside from the impropriety of deciding whom the jurors probably believed and whom they did not believe in this criminal case, it strikes me as extraordinary for the Court, having nevertheless undertaken this guesswork, to state that the defendant's alibi defense "was not likely to persuade the jury. It was merely the word of a highly partial witness; defendant's wife." I would not like to be associated with the implicit appellate conclusion that the defendant's wife in this case probably committed perjury or that, in general, in a criminal case, a defendant's spouse, whose evidence is contradicted by prosecution witnesses, is not very worthy of belief. That sort of reasoning strikes me as the residue of the spousal disqualification rule that was abolished in federal courts long ago. I know of no rule of law that declares that testimony of a spouse in support of a defense advanced by a defendant in a criminal case is, as a matter of law, unworthy of belief, even when the prosecution's "evidence pointing to defendant's guilt [is] strong if not overwhelming." That, of course, is precisely why the matter of the credibility of witnesses is left for the factfinder, in this case a jury, to be enhanced or impeached by the introduction of evidence at trial, and not for appellate second-guessing.

The long range harm in today's decision is not that it "encourage[s] a jury to speculate wildly as to the commission of a crime on a date not covered by the proof"; it is that it authorizes trial courts and subsequent panels of this Court to speculate that when a defendant's alibi was provided by his or her spouse, or perhaps a near relative, it very likely was not believed by the jury hearing the case, and therefore an instruction like the one given in this case that destroys the defendant's defense did no damage because the jurors did not believe the defense anyway.

Because I cannot know whether the jury believed or disbelieved the defendant's alibi and therefore cannot know whether the court's erroneous instruction was taken by the jury as license to convict the defendant for a crime for which no proof was offered, I would set aside the verdict and remand the case for a new trial.