PEOPLE v KESKIMAKI

Docket No. 97060. Argued May 5, 1994 (Calendar No. 1). Decided August 23, 1994.

Ray S. Keskimaki was charged in the 96th District Court with operating a motor vehicle while under the influence of intoxicating liquor, and, alternatively, with operating a motor vehicle while visibly impaired, second offense. The court, Patricia Micklow, J., denied the defendant's motion to suppress the results of blood-alcohol tests, ruling that because the police found him slumped over the wheel of his vehicle, while parked on the shoulder of the roadway with headlights on and engine running, an accident had occurred within the meaning of MCL 257.625a(9); MSA 9.2325(1)(9), the accident exception to the physician-patient privilege of the implied consent statute, rendering the results of the blood tests admissible. The Marquette Circuit Court, Edward A. Quinnell, J., affirmed. The Court of Appeals, SAWYER, P.J., and HOOD and WEAVER, JJ., affirmed in an opinion per curiam, finding that while a lawfully parked car, without more, cannot logically be considered an accident, nevertheless the totality of the circumstances mandated the conclusion that an accident had occurred and that the results of the blood tests were properly admitted under the accident exception (Docket No. 144284). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice CAVANAGH, and Justices LEVIN, RILEY, and MALLETT, the Supreme Court *held*:

The trial court and the Court of Appeals erred in characterizing the situation in this case as an accident within the meaning of the accident exception to the physician-patient privilege of the implied consent statute.

1. Whether an accident has occurred for purposes of applying the implied consent statute depends on an examination of all the circumstances surrounding an incident. Relevant to such a determination is whether there was a collision, whether per-

REFERENCES

Am Jur 2d, Automobile and Highway Traffic §§ 122-124; Searches and Seizures §§ 54, 83, 193.

See ALR Index under Chemical Sobriety Test; Driving While Intoxicated; Search and Seizure.

sonal injury or property damage resulted, and whether the incident either was undesirable for or unexpected by any of the parties directly involved.

2. In this case, the absence of a collision, personal injury, or property damage, and the seemingly expected and desired nature of defendant's actions in driving his car onto the side of the roadway, with lights on and engine running, compels the conclusion that the actions of the defendant cannot be construed as an accident within the meaning of the accident exception. Thus, the results of his blood test cannot be admitted into evidence on the basis of the accident exception.

Decision of the Court of Appeals vacated; results of the defendant's blood tests suppressed.

Justice BOYLE, joined by Justice GRIFFIN, dissenting, stated that to the extent that the physician-patient privilege might affect this case, it has been abrogated by MCL 257.625a(9); MSA 9.2325(1)(9), which expands the implied consent statute to cover the situation, as in this case, in which a person suspected of driving while intoxicated is transported to a medical facility because of a medical emergency and given a blood-alcohol test for the purpose of medical treatment.

The purpose in enacting subsection 9 was to facilitate, not restrict, the admission of blood-alcohol test results in criminal prosecutions; it does not contain a physician-patient privilege. Rather, it is a reporting statute that abrogates the privilege where blood samples are requested by a prosecutor for use in a criminal prosecution and exculpates medical personnel from liability. The issue is not whether an accident occurred, but whether what occurred was the kind of event contemplated in the statute.

The trial court did not err in denying the defendant's motion to suppress the evidence because, even assuming that the requirements of subsection 9 are not satisfied, the privilege does not entitle the defendant to the remedy he is seeking. The privilege is limited to persons authorized to practice medicine or surgery, and applies only when not waived. On the basis of the record, it cannot be said that either of the conditions will be satisfied.

If the blood-test results can be admitted into evidence without the testimony of a physician, the privilege will not become an issue in this case. Even if the privilege prevented admission of the test results during the prosecutor's case in chief, the defendant might waive that privilege by testifying that he was not intoxicated.

200 Mich App 277; 503 NW2d 755 (1993) vacated.

CRIMINAL LAW — DRIVING WHILE INTOXICATED — IMPLIED CONSENT —
    ACCIDENT.
    Whether an accident has occurred for purposes of applying the
    implied consent statute depends on an examination of all the
    circumstances surrounding an incident; relevant to such a
    determination is whether there was a collision, whether per-
    sonal injury or property damage resulted, and whether the
    incident either was undesirable for or unexpected by any of the
    parties directly involved (MCL 257.625a[9]; MSA 9.2325[1][9]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Scott K. Hanson* and *Terrence E. Dean,* Assistant Prosecuting Attorneys, for the people.

*Mark Peter Stevens* for the defendant.

BRICKLEY, J. We granted leave in this case to determine whether the accident exception[1] to the physician-patient privilege contained in subsection 9 of the implied consent statute encompasses the situation in which an occupied vehicle is lawfully "parked" on the shoulder of the roadway with headlights on and engine running. We conclude that both the trial court and the Court of Appeals erred in characterizing such a situation as an accident within the meaning of the statutory exception. Accordingly, we vacate the decisions of the trial court and the Court of Appeals and we

[1] At the relevant time, MCL 257.625a(9); MSA 9.2325(1)(9) provided, in pertinent part:

    If after an *accident* the driver of a vehicle involved in the
    accident is transported to a medical facility and a sample of the
    driver's blood is withdrawn at that time for the purpose of
    medical treatment, the results of a chemical analysis of that
    sample shall be admissible in a criminal prosecution for a
    crime described in subsection (1) to show the amount of
    alcohol . . . in the person's blood at the time alleged, regard-
    less of whether the person had been offered or had refused a
    chemical test. [Emphasis added.]

order that the results of defendant's blood test that were previously admitted under the accident exception be suppressed.

I

FACTS

Our review of the record supports the following facts. On February 2, 1991, at approximately 6:48 P.M., a Republic Township[2] police officer observed the defendant's vehicle lawfully "parked"[3] on the shoulder of the roadway, with headlights on and motor running. Tire tracks in the snow indicated that the vehicle had traveled in a straight line, following its departure from the roadway. Stopping his car to investigate further, the officer observed the defendant slumped over the steering wheel, apparently unconscious and breathing erratically. Using a "slim jim" to unlock the defendant's car, the officer attempted to rouse defendant by shaking him. When defendant failed to respond, the officer summoned emergency medical services (EMS) to transport defendant to Bell Memorial Hospital in Ishpeming, where a blood sample was drawn and analyzed, revealing a blood alcohol content greater than 0.1 percent.

Defendant was charged with operating a motor vehicle under the influence of intoxicating liquor per se[4] and, alternatively, operating a motor vehicle while visibly impaired, second offense.[5]

[2] Republic Township is located in Marquette County, Michigan.

[3] Although the police officer initially testified that the vehicle was lawfully parked, on redirect examination, the officer explained that the vehicle was just "[p]ulled off to the side of the road. The vehicle has a standard transmission; it was in neutral." For purposes of this appeal, we need only note that the vehicle was not in motion and out of harm's way.

[4] MCL 257.625; MSA 9.2325.

[5] MCL 257.625b; MSA 9.2325(2).

Defendant filed a motion to suppress the results of the blood tests, arguing that he had not been involved in an accident as required under the accident exception, and that, consequently, the results were not admissible under MCL 257.625a(9); MSA 9.2325(1)(9).[6] The district court denied defendant's suppression motion, ruling that an accident had occurred within the meaning of the statute, rendering the results of the blood test admissible.

Defendant challenged the district court's ruling in an interlocutory appeal in the circuit court, but the circuit court affirmed the district court's order, and denied defendant's motion for reconsideration.

The Court of Appeals granted defendant's interlocutory application for leave to appeal, and affirmed the lower courts' decisions in an opinion per curiam issued June 22, 1993.[7] While recognizing that a lawfully parked car, without more, cannot logically be considered an accident, it nevertheless determined that the totality of the circumstances mandated the conclusion that an accident had occurred and that the results of the blood test were properly admitted under the accident exception. MCL 257.625a(9); MSA 9.2325(1)(9). In support of its conclusion, the Court of Appeals cited *Tope v Howe,* 179 Mich App 91; 445 NW2d 452 (1989), a case in which the Court of Appeals had struggled with the problem of determining what constituted an "accident" for purposes of the provision for arrest without a warrant embodied in the implied consent statute.[8] The *Tope* Court adopted the following definition of "accident,"

---

[6] See n 1.

[7] 200 Mich App 277; 503 NW2d 755.

[8] See MCL 257.625(1); MSA 9.2325(1), which provided in pertinent part:

A peace officer may, without a warrant, arrest a person when

which had been promulgated twenty-six years ear-
lier in an insurance dispute:

> [A]n "undesigned contingency, a casualty, a hap-
> pening by chance, something out of the usual
> course of things, unusual, fortuitous, not antici-
> pated, and not naturally to be expected." [*Tope,
> supra* at 99, quoting *Guerdon Industries, Inc v
> Fidelity & Casualty Co of New York,* 371 Mich 12,
> 18-19; 123 NW2d 143 (1963).]

Applying this to the case at bar, the Court of
Appeals concluded that a car parked alongside the
highway with its engine running, its lights on, and
its driver slumped over the passenger seat, unable
to be easily aroused, when considered in its en-
tirety, constituted

> "an 'undesigned contingency, a casualty, a happen-
> ing by chance, something out of the usual course
> of things, unusual, fortuitous, not anticipated, and
> not naturally to be expected.'" [200 Mich App 277,
> 281; 503 NW2d 755 (1993).]

On this basis, the Court of Appeals denied defen-
dant's motion to suppress.

On March 21, 1994, we granted defendant's ap-
plication for interlocutory leave to appeal,[9] and we
now vacate the decisions of the lower courts and
order that the results of the blood test be sup-
pressed.

II

The sole issue before this Court on appeal is
_____

the peace officer has reasonable cause to believe that the
person was, at the time of an accident, the driver of a vehicle
involved in the accident . . . .

[9] 444 Mich 973.

whether defendant was involved in an "accident" within the meaning of the accident exception[10] to the physician-patient privilege.[11] Perhaps partly because of its belief that the meaning of the word "accident" was intuitively apparent, the Legislature neglected to define this term when it enacted this legislation. Despite this apparent omission, we have never before endeavored to provide a functional definition of "accident" applicable to subsection 9 of the implied consent statute. Although we have ascribed meaning to this term in the insurance setting, we conclude today that the expansive definition of "accident" adopted by this Court within the insurance context cannot be blindly transported into the criminal arena. Accordingly, we turn our attention to the statute and the case law in an effort to determine the appropriate meaning of "accident" under the accident exception.

A

Generally, information relating to medical treatment falls within the ambit of the physician-patient privilege, and remains confidential.[12] Subsection 9 of the implied consent statute, however, carves out a limited exception. At the time of the alleged "accident," MCL 257.625a(9); MSA 9.2325(1)(9) stated in pertinent part:

---

[10] MCL 257.625a(9); MSA 9.2325(1)(9). See n 1.

[11] MCL 600.2157; MSA 27A.2157, which provides in part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon.

[12] See n 11.

If after an *accident* the driver of a vehicle in the
accident is transported to a medical facility and a
sample of the driver's blood is withdrawn at that
time for the purpose of medical treatment, the
results of a chemical analysis of that sample shall
be admissible in a criminal prosecution for a crime
described in subsection (1) to show the amount of
alcohol . . . in the person's blood at the time al-
leged, regardless of whether the person had been
offered or had refused a chemical test. [Emphasis
added.]

Pursuant to this section, results of a defendant's
blood tests may be obtained irrespective of
whether the physician-patient privilege has been
waived or a valid search warrant has been ob-
tained. The admission of such evidence at trial in
accordance with this subsection violates neither
the Fourth Amendment's prohibition of unreason-
able searches and seizures nor the physician-
patient privilege.[13]

In *People v Perlos,* 436 Mich 305, 328; 462
NW2d 310 (1990), we examined the constitutional-
ity of subsection 9 of the implied consent statute,
and concluded:

We find subsection 9 to be a carefully tailored
statute which only allows chemical test results to
be turned over to the state under narrowly defined
circumstances, if the state requests them. For the
statute to apply there first must be an accident, a
person must be taken to a medical facility, the
person must have been the driver of a vehicle
involved in the accident, and medical personnel
must order a chemical analysis, on their own
initiative, for medical treatment. This is not a
sweeping abandonment of the physician-patient
privilege. Prosecutors can only gain access to
chemical test results. They cannot obtain all of a

---

[13] See *People v Perlos,* 436 Mich 305; 462 NW2d 310 (1990).

person's medical records, nor can they obtain a blood sample for their own discretionary testing. Consequently, within narrow parameters, the Legislature has created a minor exception to the physician-patient privilege.

It is this "minor exception" that we seek to interpret and apply in the instant case. We are constrained in this endeavor by the well-established canon of statutory construction that compels the judiciary to seek to effectuate the intent of the Legislature. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638; 513 NW2d 799 (1994). In doing so, we must employ the "ordinary and generally accepted meaning of the words used by the Legislature." *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). Ever mindful of these guiding principles, we commence an examination of the purposes underlying the statute.

B

The legislative purposes underlying the accident exception were articulated in *Perlos, supra,* where we observed that subsection 9 was designed to promote the safety of both the public and the drunk driver. *Perlos, supra* at 333. Public safety is enhanced by simplifying the prosecution of drunk drivers; this "ease[ ] of prosecution" flows naturally from subsection 9's authorization of the admission into evidence of blood-alcohol content test results obtained without a warrant.[14] The injured drunk driver's safety is facilitated by allowing police to acquire the test results without a war-

[14] Our Court of Appeals acknowledged this same purpose in *People v Stoney,* 157 Mich App 721, 726; 403 NW2d 212 (1987), when it noted that this provision was designed to simplify the prosecution of drunk drivers by allowing prosecutors access to blood-alcohol test results performed by hospitals, without having to obtain a search warrant.

rant, thereby eliminating any potential delay in securing prompt medical attention resulting from the police officer's need to effectuate a lawful arrest; arresting the driver before the administration of the blood-alcohol test is *not* a prerequisite for admission of the test results. Cognizant of the recognized purposes underlying the provision, we turn now to the relevant case law.

C

Initially, we note that neither our Court nor the Court of Appeals has had occasion to define "accident" under the accident exception. We are not without guidance in this endeavor, however, as both the Court of Appeals and courts of foreign jurisdictions have grappled with assigning meaning to the term "accident" under relevant criminal statutes.

1

In *Tope, supra,* the Court of Appeals was presented with the problem of defining "accident" under the provision for arrest without a warrant of the implied consent statute.[15] The plaintiff was arrested for driving under the influence of intoxicating liquor after she had driven her car over a lawn in the middle of a bright, autumn day, for no apparent reason.[16] Upon dismissal of the criminal charge, the plaintiff filed a complaint against the arresting officers alleging, inter alia, false arrest and false imprisonment. The lawfulness of the arrest without a warrant hinged on whether the plaintiff's actions could be classified as an acci-

[15] MCL 257.625(1); MSA 9.2325(1). See n 8.

[16] The plaintiff's actions in driving over the lawn were observed by the homeowner and evidenced by the three ruts remaining in the lawn.

dent.[17] After acknowledging the absence of a definition of "accident" within the criminal context, the Court of Appeals proceeded to embrace a definition of "accident" advanced in the insurance setting, concluding that there was

> no reason to believe a different definition would prevail in the context of driving under the influence of intoxicating liquors or controlled substances. [*Tope, supra* at 99.]

Consequently, "accident" was defined as:

> [A]n "undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." [*Tope, supra* at 99, quoting *Guerdon Industries, Inc v Fidelity & Casualty Co of New York, supra* at 18-19.]

We decline to adopt such an expansive definition of "accident" within the context of the accident exception at issue. Although this definition contains many words often employed in describing an "accident," it is both over inclusive and under inclusive. Its over inclusiveness is evident from the case at bar. Despite the seemingly calculated nature of the defendant's conduct in driving his car off the road, such action, when viewed from the perspective of an observer, may be characterized as being "out of the usual course of things," and thus classified as an accident, contrary to our holding today. Its under inclusiveness is evident from the definition's ostensible exclusion of intentional conduct from the realm of "accident." We

---

[17] See MCL 257.625(1); MSA 9.2325(1) and n 8.

conclude below that *both* intended and unintended conduct may properly be classified as an "accident" within the meaning of the accident exception. Accordingly, we reject this definition of accident and commence an examination of the interpretation of "accident."

2

The problem of defining the parameters of an accident arose in *People v Martinson,* 161 Mich App 55; 409 NW2d 754 (1987). The defendant was convicted of assault with a dangerous weapon and leaving the scene of a personal injury accident, both of which stemmed from his actions in spraying the victim with a fire extinguisher and using his automobile to pin the victim between two cars before driving away. The defendant argued that he could not be convicted of both crimes on the same facts because the former was premised on an intentional act, while the latter, involving "accidents," could apply only to unintentional conduct.

The Court of Appeals rejected this argument, concluding:

> Where the term accident appears in criminal statutes which forbid leaving the scene of a personal injury accident, courts in other jurisdictions have interpreted accident to include intentional conduct, reasoning that such statutes are not concerned with the cause of an accident but are intended to include all automobile collisions. [*Martinson, supra* at 57. Citations omitted.]

We believe two points should be extracted from this case. First, that the intent of the actor, though relevant, is not controlling in determining

whether an accident has occurred,[18] and secondly, that the term "accident," when modified by "automobile," generally refers to a *collision*.[19]

3

Our Court of Appeals had the opportunity to apply the accident exception in *People v Stoney*, 157 Mich App 721; 403 NW2d 212 (1987). The determinative issue in that case, as in the case at bar, concerned the admissibility of blood-alcohol content test results. The defendant was bleeding and incoherent when discovered at the scene of an accident and two other passengers in his car were also injured. The Court of Appeals concluded that the test results were admissible because the tests had been performed by medical personnel after the defendant had been transported to a hospital for treatment following the accident.

This case is instructive for two reasons. Initially, we note the lack of analysis in the Court's determination that an accident had occurred. The obvious explanation is that it will often be readily apparent that an "accident" has occurred.[20] In this

---

[18] The intentional nature of a person's conduct does not preclude characterizing such conduct as an "accident" under subsection 9 of the implied consent statute, though it may weigh against such a classification.

[19] See *State v Parker*, 299 Or 534, 542; 704 P2d 1144 (1985) ("The word 'accident,' therefore, is used in a generic sense, to mean any occasion in which a driver's vehicle 'collides with' or, in other words, strikes against another object").

[20] See *People v Dexter*, 49 AD2d 981; 374 NYS2d 727 (1975), where the Supreme Court of New York, Appellate Division, held that an accident had occurred within the meaning of the applicable statute when the defendant's vehicle was discovered after following skid marks leading across *both* sides of the road, into a field, and finally ending at the defendant's vehicle, twenty-five to thirty feet off the public highway. The existence of skid marks on *both* sides of the road and the car's exodus into the field enabled the court to infer that the car was out of control, and thereby conclude, without analysis, that an accident had occurred.

case, the serious injury sustained by both the driver and the passengers dispels any doubt that they were involved in an accident. The second point meriting consideration is a natural corollary to the first. While not dispositive, it is often the case that an accident will spawn either personal injury or property damage.[21] Although the absence of injuries or property damage cannot conclusively prove the nonoccurrence of an accident, the existence of either of these following a collision compels the conclusion that an accident has occurred.

4

The dilemma of determining whether an accident had occurred was again before the Court of Appeals, though within a slightly different context,[22] in *People v Spencley,* 197 Mich App 505, 506; 495 NW2d 824 (1992). The facts of that case are similar to the facts presented in the case at bar. The defendant's automobile was partially parked on the shoulder of US 31 and partially in a motel driveway. Its lights were on and the engine was running, with defendant crouched down behind the wheel, asleep. A strong odor of alcohol permeated the vehicle.

The issue on appeal was whether the officers had the authority to arrest the defendant where the offense was committed outside the officers' presence and the arrest was effectuated without a warrant. The validity of this misdemeanor arrest without a warrant hinged on whether it fit within an exception to the warrant requirement. One such exception exists when an accident has oc-

---

[21] See *State v DuBray,* 298 NW2d 811 (SD, 1980) (Where there was noticeable damage to the headlight, headlight bezel, and the bumper guard, it was evident there had been a traffic accident).

[22] Namely, under the statute pertaining to the operation of a motor vehicle while impaired, MCL 257.625b; MSA 9.2325(2).

curred. See MCL 764.15(1)(h); MSA 28.874(1)(h). Consequently, the validity of the arrest was necessarily contingent on whether an accident had occurred. Without engaging in any analysis, the Court proceeded to state in conclusory fashion that the defendant had not been involved in an accident and that the arrest was illegal. *Spencley, supra* at 505. The importance of this case lies in its illustration that the unusual nature of an event is not necessarily sufficient to render it an "accident."

5

Finally, we survey the definition of accident found in both the *American Heritage Dictionary* and Black's Law Dictionary.[23] Accident has been defined by the *American Heritage Dictionary* (new college ed), p 8, as "[a]n unexpected and undesirable event; a mishap." Black's Law Dictionary offers the following as the most commonly accepted meaning of the word accident:

> "[A] fortuitous circumstance, event, or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens . . . ." [6th ed, p 15.]

The key point to be distilled from these definitions is that an accident often encompasses an event that is undesirable for and unexpected by at least

---

[23] We note that our consideration of dictionary definitions comports with our mandate to employ the "ordinary and generally accepted meaning of the words used by the Legislature." *Lorencz v Ford Motor Co, supra* at 376.

one of the parties involved.[24] This factor, however, is not dispositive. Despite the Court of Appeals apparent ruling to the contrary, the unexpectedness or undesirability of an event viewed from the perspective of a policeman coming on the scene is not necessarily sufficient to classify the incident as an "accident." Rather, it is only one of many factors to be considered. With this in mind, we turn now to the rule to be derived.

## III

### A

We do not attempt to propound a general definition of "accident" applicable to all criminal statutes, or even to only the accident exception. Rather, we believe that the determination whether an accident has occurred will depend on an examination of all the circumstances surrounding an incident.[25] Although we are declining to formulate a precise definition of the term, we think the relevant factors used in making such a determination can and should be delineated. Accordingly, we believe consideration should be given to whether there has been a collision,[26] whether personal in-

[24] Although we note that it is *often* unexpected and undesired by one of the parties, we are *not* holding that that must be the case. We can envision a scenario in which a car intentionally may be driven on to a person's own property, yet it could be classified as an "accident" within the meaning of the accident exception.

Furthermore, we note that an accident is often unexpected and undesired by at least *one* of the parties involved, but not necessarily *all,* because it may be that one or more of the parties involved in the "accident" intended such action, and we have determined that such *intentional* conduct may properly be characterized as an "accident."

[25] See *State v Smyth,* 121 RI 188, 191; 397 A2d 497 (1979), where the Rhode Island Supreme Court determined that an accident "is a generic concept requiring examination of its environs in order to define it."

[26] Collision is defined as "[a] direct, violent striking together; crash," in the *American Heritage Dictionary* (new college ed), p 262.

jury or property damage has resulted from the
occurrence, and whether the incident either was
undesirable for or unexpected by any of the par-
ties directly involved. While we do not intend this
to be an exhaustive list of factors to be considered,
included are those that we believe will appear
with frequency in true "accidents"; such factors
may be regarded as the distinguishing characteris-
tics of an accident. With these considerations in
mind, we turn now to their application in the case
at bar.

B

As stated above, defendant's vehicle was law-
fully "parked" on the shoulder of the roadway,
with its headlights on and its motor running. Tire
tracks in the snow established that defendant's
vehicle had traveled in a straight path upon leav-
ing the roadway. Defendant was slumped over the
steering wheel, breathing erratically and seem-
ingly unconscious. There was no sign of a collision,
no evidence of property damage, and no apparent
personal injury, other than visible intoxication.
Because the defendant was the only party involved
in the incident, we need only examine whether
such incident was undesirable for or unexpected
by him. It seems clear that these circumstances
were neither undesirable for nor unexpected by
defendant. Rather, it appears as though he parked
on the side of the road in order to sleep off the
effects of alcohol, leaving his car running in an
attempt to stay warm on this February night in
Marquette County. Consequently, we conclude that
the events that led the officer to believe that an
accident had occurred were neither undesirable for
nor unexpected by the defendant, but, instead,
embodied a calculated effort on defendant's part to

mitigate the potential harm stemming from his intoxication.

Consideration of these factors compels the conclusion that defendant was not involved in an accident as required under the statutory exception. We believe this result is also supportable from a policy perspective. We noted earlier that one of the purposes of the accident exception was to facilitate the safety of both the public and the drunken driver. To conclude that an accident has occurred when a drunk driver has recognized his impairment and left the road in an attempt to recover his sobriety by sleeping is to discourage the one drop of sensible conduct in a sea of irresponsible action. We do not believe the Legislature intended these consequences, and we decline to interpret "accident" in a manner both inconsistent with and subversive to our perception of the legislative intent underlying the accident exception.

IV

The absence of a collision, personal injury, or property damage, and the seemingly expected and desired nature of defendant's actions in driving his car onto the side of the roadway, with lights on and engine running, compels us to conclude that the actions of the defendant cannot be construed as an accident within the meaning of the accident exception. Consequently, the results of defendant's blood test cannot be admitted into evidence on the basis of the accident exception.[27] Accordingly, we vacate the decision of the Court of Appeals and order that the results of defendant's blood tests be suppressed.

CAVANAGH, C.J., and LEVIN, RILEY, and MALLETT, JJ., concurred with BRICKLEY, J.

---

[27] See n 1.

BOYLE, J. (*dissenting*). The defendant argues that the trial court erred in denying his motion to suppress the results of a blood-alcohol test because this information is inadmissible under the physician-patient privilege found in MCL 600.2157; MSA 27A.2157. I disagree.

To the extent the physician-patient privilege might affect this case, it has been abrogated by MCL 257.625a(9); MSA 9.2325(1)(9). I read subsections 9 and 10 of the statute[1] as an expansion of the implied consent statute to cover the situation in which an individual suspected of violating the laws precluding driving while intoxicated is transported to a medical facility because of a medical emergency and given a blood-alcohol test for the purpose of medical treatment.

The majority's assumption that the statute is an "accident exception" to a broadly applicable[2] physician-patient privilege "contained" in subsection 9, *ante* at 242, and that if the exception does not apply, the privilege requires suppression of the evidence, is incorrect.[3] The Legislature's purpose in enacting subsection 9 was to facilitate, not

[1] These provisions are now found at MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e). We will assume that the previous version of the statute applies because the parties appear to agree that it does and, more importantly, the differences between that version and the current version, which would be in effect at the time of a trial, are so slight that they do not affect the result.

[2] The privilege did not exist at common law. *Developments in the law: Privileged communications,* 98 Harv L R 1450, 1530, n 1 (1985) (citing 8 Wigmore, Evidence [McNaughton rev], § 2380, p 819).

[3] In attempting to harmonize the legislative expression of intent in the physician-patient privilege with that expressed in MCL 257.625a(9); MSA 9.2325(1)(9), in *People v Perlos,* 436 Mich 305; 462 NW2d 310 (1990), we referred to subsection 9 as a minor exception to the privilege. However, we did not endorse the proposition that, if § 625a(9) does not apply, the physician-patient privilege requires exclusion of blood-alcohol test results. Indeed, in *McNitt v Citco Drilling Co,* 397 Mich 384, 392; 245 NW2d 18 (1976), the Court, in an opinion by Justice LEVIN, expressly reserved the question whether the implied consent statute had supplanted the common law.

restrict, the admission of blood-alcohol test results in criminal prosecutions. The language, historical context, and common-sense construction of the statute confirms that subsection 9 does not "contain" the physician-patient privilege. Rather, it is a reporting statute that abrogates the privilege for blood samples requested by the prosecutor "for use in a criminal prosecution as provided in this subsection."

I

Subsections 9 and 10 cannot be understood without an examination of their history. These subsections were added by amendment in 1982 PA 310 in the aftermath of two decisions by this Court. See *People v Keen*, 396 Mich 573; 242 NW2d 405 (1976); *McNitt v Citco Drilling Co*, 397 Mich 384; 245 NW2d 18 (1976). In *Keen*, the Court held that a blood-alcohol test was not admissible in a criminal prosecution for manslaughter, but only in prosecutions for driving under the influence of liquor or driving impaired. In *McNitt*, a civil case, the Court held that a blood test taken in a hospital from an unconscious driver "who did not consent" was not admissible as evidence. The statute then in effect required that

> a person under arrest "shall be advised of his right to refuse" a test and "if he refuses" the request "no test shall be given." [397 Mich 393.]

Because McNitt's state of unconsciousness precluded a request in conformity with the statute, the Court concluded that the result was not admissible in evidence. *Id.* at 393-394.

In apparent response to *Keen*, subsection 1 of § 625a was amended in both 1978 and 1980 to

expand the types of criminal prosecutions in which implied consent would be applied. See 1978 PA 572; 1980 PA 515. The amendments added operating while visibly impaired, negligent homicide, and manslaughter to a list that had previously included only driving under the influence of intoxicating liquor.

In apparent response to *McNitt*, the Legislature added subsections 9 and 10. See 1982 PA 310. Subsection 9 specifically responds to the rationale in *McNitt*, and squarely rejects it:

> [T]he results of a chemical analysis of that sample shall be admissible in a criminal prosecution for a crime described in subsection (1) . . . regardless of whether the person had been offered or had refused a chemical test.

In addition, and even more persuasive evidence of the legislative intention to facilitate admissibility,[4] the Legislature also explicitly responded to another rationale advanced in *McNitt*. In *McNitt*, the Court rejected the argument that the results were admissible under common law. It instead concluded that statutory authority was necessary to authorize the administration of blood tests because hospital authorities had probably taken the blood at the request of a police officer, rather than for diagnostic purposes.[5] In subsection 9, the Legis-

---

[4] Further evidence of the legislative intent to broaden admissibility to permit effective prosecution is found in the fact that the amendment, 1982 PA 310, also struck the sentence in the 1980 statute that had provided:

> Failure to fully comply with the [defendant's] request shall bar the admission of the results into evidence by the prosecution.

[5] The Court stated the following:

lature specifically addressed this distinction between law enforcement and diagnostic purposes by providing for admissibility of a sample withdrawn "for the purpose of medical treatment."[6]

Although the statute provides that a "person disclosing information in compliance with this subsection shall not be civilly or criminally liable," a final reference to *McNitt* establishes that compliance with this subsection does not, as the majority assumes, mean that medical personnel must verify that there has been an accident. As the Court observed in *McNitt*, 397 Mich 391, n 9,

> The exculpation from liability is we think triggered by "the request of a police officer." Absent disclaimer by the officer that he is acting under the statute, hospital personnel are protected in relying on such a request as authorization to proceed to administer a test under the statute without independent investigation and determination whether statutory requirements have been observed.

In like manner, the exculpation from liability granted by § 625a(9) is triggered by the prosecuting attorney's request for the information. A common-sense construction of the statute would suggest, as *McNitt* observed, that the Legislature did not intend that medical personnel be placed in the dilemma of refusing the request for blood re-

There is no suggestion that the hospitals would have allowed their personnel to draw blood for determination of alcohol content without a "request of a police officer" or that they would have allowed this to be done if they did not have the resulting statutory protection from civil and criminal liability. [397 Mich 391.]

[6] The section of the statute interpreted in *McNitt* as requiring an offer of tests and blood analysis at the request of a police official was reenacted, and presently appears as MCL 257.625a(6)(c); MSA 9.2325(1)(6)(c).

sults until they had independently determined
that the patient had been involved in an "accident."

II

In my view, the issue is not whether an "accident" occurred, but rather whether what occurred
is the kind of event the Legislature contemplated
when it authorized medical personnel to make
diagnostic blood-alcohol tests obtainable by the
prosecutor for use in evidence.[7]

I agree with the majority that the word accident
is ambiguous. However, construing subsection 9 of
§ 625a in pari materia with the remainder of
§ 625a and § 625b, I would conclude that the word
"accident" in subsection 9 means an incident
where, because of a medical emergency, an individual is transported to a medical facility,[8] and is
suspected of operating or being in actual physical
control upon the public highway of a motor vehicle
in violation of those laws specifically described in
§ 625a(1)(a), (b).

This construction harmonizes the language of
the statute and advances the state's compelling
interest in controlling the devastating human and
financial toll caused by intoxicated drivers. It is
also consistent with our conclusion in *People v*

[7] The majority assumes that the word "accident" modifies the
phrase "for use in a criminal prosecution as provided in this subsection." Such a construction, however, fails to explain why the Legislature might have intended to modify the explicit directive in subsection 9 that the tests "shall be admissible . . . for a crime described in
subsection (1)." Subsection 1 expressly includes driving under the
influence and impaired driving, neither of which necessarily or even
commonly involve an accident.

[8] It is not necessary to decide here whether the word "accident" has
a different meaning for purposes of arrest, see *Tope v Howe,* 179 Mich
App 91; 445 NW2d 452 (1989), or to decide whether other authority
would authorize or require police officers to transport an individual to
a medical facility. See *City of Troy v Ohlinger,* 438 Mich 477; 475
NW2d 54 (1991).

*Perlos,* 436 Mich 305, 326; 462 NW2d 310 (1990), that an expectation of privacy in blood-alcohol results under subsection 9 is not an expectation the Legislature considers "reasonable." The majority correctly observes that in *Perlos* we recognized that the Legislature had not created a generally applicable exception to the physician-patient privilege. However, the actual holding of *Perlos* is that the physician-patient privilege did not preclude obtaining the blood-alcohol results.

In fact, we observed in *Perlos* that while the Legislature had abrogated the statutory privilege, the Legislature had not abolished the longstanding common law and that the statutorily created physician-patient privilege was "subject to many exceptions in states where it exists by virtue of statute." *Id.* at 327. It is more consistent with the balancing of public and private interests addressed in *Perlos* to conclude that subsection 9 does not abrogate a privilege for medical records generally, than it is to conclude that the privilege would surmount the common-law exceptions unless an "accident" had occurred.

This construction would also avoid creating a gap in the implied consent statute. The purpose of the statute is to force a driver suspected of being intoxicated either to consent to a blood-alcohol test or face consequences, including suspension of his operator's license and imposition of six points on his driver's record. See MCL 257.625a(6)(b)(iii); MSA 9.2325(1)(6)(b)(iii). The majority carves out an exception for defendants who are incapable either of consenting to or refusing a blood-alcohol test at the time they are found by police. It allows them to subsequently refuse to submit the only test results available—those obtained at the hospital— without facing any consequences.

The word "accident" does not restrict a hospi-

tal's duty to release the results of blood tests that
were taken for medical purposes, any more than
the word "driver" does.[9] Given that one justifica-
tion of physician-patient privilege is to facilitate
private communications, it would be anomalous to
conclude that society recognizes no privacy inter-
est in blood-test results where an "accident" oc-
curred, but would recognize a privacy interest in
such results where a medical emergency necessi-
tated hospital transport and similar suspicion ob-
tained.[10]

### III

Nor can I agree that the majority's conclusion is
supportable from a policy perspective. Under a
variety of theories, many state courts have held
that because the physician-patient privilege is not
absolute, the results of blood-alcohol tests are sub-
ject to the common-law authority of the court.
Irrespective of the particular rationale advanced
for the result, the premise of these decisions is
that the privilege must yield to the public interest
in respect to blood tests taken in relation to crimi-
nal charges[11] involving drunk driving.

In *State v Robbins,* 549 NE2d 1107 (Ind App,
1990), the defendant, who had been involved in a
one-car accident, claimed that blood-alcohol results
were inadmissible under an implied consent law

[9] That is, it could not be seriously suggested that a court must
exclude blood-test results simply because a defendant disputes the
state's allegation that he was operating a vehicle.

[10] In my view, it is much more likely that the Legislature intended
to encourage medical treatment for unconscious persons suspected of
violating drunk-driving laws than that they created policy on the
basis of the dubious proposition that those intoxicated to the point of
stupor might be encouraged to pull off the road.

[11] Courts recognizing their authority to narrowly construe the
physician-patient privilege for purposes of enforcement of laws relating
to drunk driving do not necessarily apply the same rationale to civil
cases. See *Dillenbeck v Hess,* 73 NY2d 278; 536 NE2d 1126 (1989).

that allowed testing of a person involved in "a motor vehicle accident" that involved serious bodily injury or the death of another. The court rejected the claim, noting that the section had been added to fill a gap in the statute, and that to read the section as a limitation on implied consent "would be at odds with the rest of the chapter":

> [T]he statute does not create any rights in a criminal defendant, but rather limits his right to invoke a privilege. [*Id.* at 1109-1110.]

Other courts have addressed the privilege statutes (as opposed to the implied consent statutes). In *State v Erickson,* 241 NW2d 854, 864 (ND, 1976), the court held that blood samples taken pursuant to the state's implied consent laws were not "information" within the physician-patient privilege and therefore would not be excluded when the privilege was invoked. In *State v Betts,* 235 Or 127, 140-141; 384 P2d 198 (1963), on the other hand, the court held that physician-patient privilege statutes should be limited to criminal proceedings:

> A physician attending a defendant is frequently the sole or most competent source of very relevant evidence. In the present case the physician was the person best qualified to testify to a relevant fact,—was the defendant intoxicated? In other cases the question could be,—was the defendant under the influence of narcotics or how recently did the defendant's wound appear to have been inflicted? It seems obvious that the testimony of the treating physician is highly important in many criminal cases.
> We conclude that the dubious benefit provided by throwing the veil of privilege over the patient-physician relationship is outweighed in criminal proceedings by the advantage to the public secured

by the efficient administration of criminal justice
which is obtained by permitting the introduction
of competent and relevant evidence which the
physician can give about his patient. Upon the
basis of this belief the Oregon statutes are inter-
preted as limiting the physician-patient privilege
to civil proceedings.

In *State v Zielke,* 137 Wis 2d 39, 41; 403 NW2d
427 (1987), the Wisconsin Supreme Court squarely
addressed and rejected the argument that "the
implied consent law is the exclusive means by
which police may obtain chemical test evidence of
driver intoxication, and therefore failure to comply
with the procedures set forth in the implied con-
sent law required suppression."

Defendant Zielke was charged with homicide by
intoxicated use of a motor vehicle as the result of
his allegedly having struck from behind a motor-
cycle stopped at a red light. The impact caused the
motorcycle to collide with another vehicle after
which it flew through the air, crashed, and caused
extensive burns to the passenger and the motor-
cycle driver, who died from their injuries. Zielke,
who appeared confused and had himself been
burned, was taken to the hospital for treatment. A
blood sample was taken that was not preceded by
the statutory form of rights set out in the implied
consent law.

The district court held that failure to advise the
defendant as provided by the implied consent law
required suppression of the evidence in the pros-
ecution of the criminal offense. The supreme court
reversed, concluding that, although the state's
failure to advise the defendant as provided by law
would forfeit the state's right to revoke a driver's
license for refusal to submit to a test and deprive
it of the evidentiary benefit of the refusal, *id.* at

51, it did not preclude admission of other legally obtained evidence in a prosecution of offenses related to the operation of a vehicle while intoxicated:

> [T]he intent of the legislature in passing the implied consent law was to facilitate the gathering of evidence against drunk drivers in order to remove them from the state's highway. . . .
> [N]othing in the statute or its history permits the conclusion that failure to comply [with the statute] prevents the admissibility of legally obtained·chemical test evidence in the separate and distinct criminal prosecution for offenses involving intoxicated use of a vehicle. Such a holding would lead to an absurd and unreasonable result. . . . In light of the clearly articulated intent of the legislature . . . and the absence of explicit legislative direction to suppress chemical test evidence for noncompliance . . . it would be absurd to infer that the legislature intended that critical evidence . . . must be excluded . . . . To so hold would give greater rights to an alleged drunk driver under the fourth amendment than those afforded any other criminal defendant. [137 Wis 2d 46, 51-52.]

I likewise find no indication in subsection 9 of a legislative intention to undermine the substantive benefits to the public in effectively enforcing the law by requiring suppression of vital evidence through the physician-patient privilege.

IV

In addition, the trial court did not err in denying defendant's motion to suppress the evidence because, even assuming for the sake of argument that the requirements of subsection 9 are not satisfied, the privilege does not entitle the defen-

dant to the remedy he is seeking.[12] The privilege, which the defendant may certainly continue to assert, is limited to "person[s] duly authorized to practice medicine or surgery," and applies only when not waived. On the record before me, I cannot say that either of the conditions will be satisfied, let alone both (which would be necessary if the evidence is to be excluded by way of the privilege).

First, it is far from clear that the testimony of a physician or surgeon will be necessary to introduce the blood-test results at trial. This statutory privilege, which did not exist at common law, is limited to persons "authorized to practice medicine or surgery." MCL 600.2157; MSA 27A.2157. Compare People v Baker, 94 Mich App 365, 368; 288 NW2d 430 (1979) (the privilege does not cover optometrists), with Saur v Probes, 190 Mich App 636, 638, n 1; 476 NW2d 496 (1991) (the privilege does cover psychiatrists, who are physicians). In Gilcrist v Mystic Workers, 188 Mich 466, 477; 154 NW 575 (1915), this Court held that although a physician could not testify regarding an insured's admission, "[t]he statute does not exclude the testimony of the nurse." Id.

If the blood-test results can be admitted into evidence without the testimony of a physician, the privilege will not become an issue in this case.

In other circumstances, one could soundly argue

[12] The defendant has not raised other possible grounds for suppression for obvious reasons. The blood-test results cannot be suppressed by means of the Fourth Amendment exclusionary rule because, once the blood is legally drawn, the defendant does not have a reasonable expectation of privacy in test results revealing the blood-alcohol content. See People v Perlos, supra, 436 Mich 326.

In addition, the privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and . . . the withdrawal of blood and use of the analysis . . . [does] not involve compulsion to these ends." Schmerber v California, 384 US 757, 761; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

that the Legislature also intended that other hospital staff would be covered by the privilege when disclosure to them "is reasonably necessary for the accomplishment of the purpose for which the physician is consulted." *Rudnick v Superior Court of Kern Co,* 11 Cal 3d 924, 932; 114 Cal Rptr 603; 523 P2d 643 (1974). Such an expansion would be unwarranted, however, in cases in which the people are seeking the only solid evidence whether or not a driver was intoxicated. The Legislature's intention in this area is exceedingly clear, as seen through its repeated elimination of obstacles to prosecutors for obtaining blood-test results. See above, pp 262-264. Under these circumstances, the privilege (if it applied) would serve no legitimate purpose and would simply allow a driver to conceal whether or not he had been intoxicated.

Second, even if the privilege did prevent admission of the test results during the prosecutor's case in chief, the defendant might waive that privilege through his conduct or otherwise. For example, when a patient makes his condition an issue by testifying at trial, he waives the physician-patient privilege as it relates to that fact. See *People v Kayne,* 268 Mich 186, 190; 255 NW 758 (1934); *People v Hunter,* 374 Mich 129, 133-137; 132 NW2d 95 (1965). If the defendant testifies at trial that he was not intoxicated at the time he drove, the privilege would be waived as it relates to that issue, and the blood-test result would be admissible.

V

For the foregoing reasons, I would affirm the decision of the trial court denying defendant's motion to suppress.

GRIFFIN, J., concurred with BOYLE, J.