# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOSEPH JAY FORD,

       Defendant-Appellant.

UNPUBLISHED
September 10, 2015

No. 322456
Kent Circuit Court
LC No. 13-011415-FH

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant was charged with two counts of operating a motor vehicle while impaired (OWI) causing death, MCL 257.625(4), and two counts of reckless driving causing death, MCL 257.626(4), following an accident in which Andrea Herrera and Eric Fischer died. After a jury trial, defendant was convicted of OWI causing death and reckless driving causing death in the death of Herrera. Defendant was acquitted of OWI causing death in the death of Fischer, but was convicted of a moving violation causing death, MCL 257.602d(1), which was submitted to the jury as a lesser offense of reckless driving causing death. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.12, to concurrent sentences of 12 years and 6 months to 30 years' imprisonment for the OWI causing death conviction and 1 year for the moving violation causing death conviction. It vacated the conviction for reckless driving causing death. Defendant appeals by right. We affirm in part but remand for proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arose out of a collision between the vehicle he was driving, a silver Charger, and the vehicle driven by Fischer, a black Mazda, in which Herrera was a passenger, at the intersection of 36th Street and Patterson Avenue in Kentwood, Michigan, on October 10, 2013. Witnesses testified to seeing defendant drink alcoholic beverages at a pizzeria earlier that evening. Witnesses to the crash testified that defendant's vehicle ran a red light at an intersection and collided with Fischer's vehicle as it was proceeding through the intersection. Fischer's vehicle was pushed into a semi-truck that was also in the intersection. Herrera was dead on arrival at the hospital, while Fischer died in the operating room. A forensic pathologist testified that both victims had died as a result of the collision. Fischer's blood alcohol level was .11 percent at autopsy, although the pathologist was unsure whether the test was serum or whole

-1-

blood. The pathologist testified that Fischer's blood alcohol level was not a significant contributing factor to his death.

Kent County Deputy Christopher Goehring testified that he spoke with defendant while defendant was in the back of an ambulance. He could smell a moderate amount of alcohol coming from defendant. Defendant told Goehring that he could not remember the whole night. He remembered where he was coming from, but nothing else. Defendant also said that he had had two beers. Other than the smell of alcohol and defendant's admission that he had been drinking, Goehring did not note any signs that defendant was intoxicated. The ambulance took defendant to St. Mary's Hospital. Goehring also went to the hospital.

Dr. Julie Shanaver, an emergency room physician at St. Mary's Hospital, treated defendant. For medical purposes, she requested a chemical analysis of defendant's blood. Defendant's blood was drawn at 11:37 p.m. Defendant's blood alcohol result was .125 percent. The hospital uses a serum test.

At the hospital, Goehring filled out an affidavit for a search warrant for defendant's blood. The warrant was signed by a magistrate. Suanne Unger, a nurse in the emergency room, drew two samples of defendant's blood at 12:04 a.m. and 12:05 a.m. on October 11, 2013. The samples were sent to the Michigan State Police (MSP) crime laboratory.

After defendant was released from the hospital, Goehring arrested defendant and then interviewed him. Defendant waived his *Miranda*[1] rights. Defendant said that he remembered more. He had dropped his friend off in Kentwood and then got lost. He made a wrong turn, and then was going north on Patterson. He approached the 36th Street intersection; the light was green. The black Mazda entered the intersection and there was an accident. He was going the speed limit, which was 55 miles per hour. He had had two beers earlier that night.

Experts from the MSP crime laboratory testified that the two samples of defendant's blood showed a blood alcohol level .086 and .088 percent by whole blood test. Further, controlled substances were found in defendant's blood, including amphetamines, morphine, and promethazine and promethazine metabolite.[2]

Michele Glinn testified as an expert in forensic toxicology, the analysis of blood, and procedures for a crime laboratory. Glinn reviewed the results and reports from the crime laboratory and St. Mary's Hospital. Glinn testified that "whole blood" is blood that comes from a person's arm. It contains red and white blood cells, as well as other proteins and clotting factors. Hospitals often separate out the red blood cells and proteins, ending up with the water fraction of the blood. Depending on the amount of filtering, this part of the blood is plasma or serum. According to Glinn, because "alcohol partitions into the water," the serum alcohol level is higher than the whole blood alcohol level. By reducing a serum alcohol level by 16 or 18

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] As Glinn testified, promethazine is an antihistamine and central nervous system depressant available only by prescription.

percent, one can obtain the whole blood alcohol level. According to Glinn, if defendant's serum alcohol level was reduced by 16 percent, his whole blood alcohol level was .105 percent for the hospital blood draw. Glinn further testified that, because a body metabolizes alcohol, the difference in time between the blood draws for the hospital and for the police could explain the difference in the whole blood alcohol levels. Specifically, because the blood draw for the police was done at a later time, Glinn would expect that the alcohol level in the blood from that draw to be lower than in the blood drawn for the hospital. According to Glinn, a decrease in defendant's blood alcohol level from .105 to .087 percent is consistent with the general metabolic range. Glinn further testified that the amphetamine level of defendant's blood was consistent with one dose of the prescription medication Adderall.[3]

The jury convicted defendant of OWI causing death and reckless driving causing death regarding Herrera. It acquitted defendant of OWI causing death regarding Fischer, but convicted him of a moving violation causing death. The trial court vacated the conviction for reckless driving causing death because "[t]here cannot be a conviction on both [charges] with the same victim." It sentenced defendant as previously described. This appeal followed.

## II. ADMISSION OF HOSPITAL BLOOD DRAW

Defendant argues that the trial court erred when it failed to suppress evidence of the blood draw ordered by Dr. Shanaver in the emergency room at St. Mary's Hospital. We disagree. We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. at 217. We review de novo questions of statutory interpretation. *People v Watkins*, 491 Mich 450, 466-467; 818 NW2d 296 (2012).

The trial court held that evidence of the hospital blood draw was admissible under MCL 257.625a(6)(e), which provides that, if "the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol . . . in the person's blood at the time alleged . . . ." According to defendant, evidence of the hospital blood draw was inadmissible under MRE 702. However, because defendant cites no authority in support of the argument that the trial court erred in not subjecting the evidence to MRE 702, the issue is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Further, MCL 257.625a(6)(e) provides, in pertinent part:

---

[3] Evidence was presented at trial that defendant had been prescribed Adderall in the past; however, there was no testimony that defendant was currently prescribed that medication, or that he was prescribed promethazine or morphine.

The following provisions apply with respect to chemical tests and analysis of a person's blood, urine, or breath, other than a preliminary chemical breath analysis:

\* \* \*

(e) If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision. A medical facility or person disclosing information in compliance with this subsection is not civilly or criminally liable for making the disclosure.

There is no dispute that evidence of the hospital blood draw met the requirements of MCL 257.625a(6)(e).

MCL 257.625a(6)(e) is a rule of evidence. It determines the admissibility of the results of a chemical analysis of a driver's blood sample that was withdrawn at a medical facility for medical treatment. See *People v Green*, 260 Mich App 392, 408-410; 677 NW2d 363 (2004), rev'd on other grounds *People v Antsey*, 476 Mich 436 (2006) (holding that, because the defendant was in an accident and his blood was drawn for purposes of medical treatment, evidence of the defendant's blood alcohol test results was admissible under MCL 257.625a(6)(e)); *People v Aldrich*, 246 Mich App 101, 118-119; 631 NW2d 67 (2001), (holding that the defendants' blood alcohol test results were admissible under MCL 257.625a(6)(e) because the withdrawal of blood was done for medical reasons); *People v Kulpinski*, 243 Mich App 8, 26; 620 NW2d 537 (2000), (holding that, because the testimony established that the defendant's blood was taken in response to a doctor's order and for medical purposes, any objection to the evidence about defendant's blood alcohol test results would have been futile). Further, MCL 257.625a(6)(e) was enacted by our Legislature to promote the public policy goals of insuring the safety of the public and the intoxicated driver. See *People v Keskimaki*, 446 Mich 240, 248; 521 NW2d 241 (1994); *People v Perlos*, 436 Mich 305, 327-328; 462 NW2d 310 (1990). It promotes the safety of the public by facilitating the prosecution of drunk drivers. It promotes the safety of the intoxicated driver by ensuring that the driver, if injured, will receive prompt medical attention, given that the police will be less inclined to detain the driver for a criminal investigation. The statute is the result of policy considerations that go over and beyond matters involving the orderly dispatch of judicial business. See *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999). Therefore, MCL 257.625a(6)(e) is not merely a procedural rule but is a valid enactment of substantive law by our Legislature and, as such,

prevails over MRE 702. See *Watkins*, 491 Mich at 474-475. The trial court thus was not required to consider MRE 702 in admitting this evidence.[4]

Even assuming arguendo that the trial court abused its discretion in admitting evidence of the hospital blood draw, defendant is not entitled to relief. "A preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation omitted). Under MCL 257.625(1), a person shall not operate a vehicle on a highway if the person is "operating while intoxicated." "Operating while intoxicated," means, in pertinent part, having an alcohol content of .08 grams or more per 100 milliliters of blood. MCL 257.625(1)(b). Evidence of the hospital blood draw was not the only evidence presented to the jury to prove that defendant drove his vehicle while having a prohibited blood alcohol content. The results of tests of defendant's blood by the MSP crime laboratory also showed that defendant had an alcohol content of .08 grams or more per 100 milliliters of blood. Thus, any error in the admission of the hospital blood draw was not outcome determinative and was harmless. *Lukity*, 460 Mich at 495-496.

## III. SEARCH WARRANT

Defendant next argues that the trial court erred in failing to suppress evidence of the blood draw taken pursuant to the search warrant. We disagree. We review de novo a trial court's ultimate determination on a motion to suppress, but we review its factual findings for clear error. *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Malone*, 287 Mich App 648, 663; 792 NW2d 7 (2010) (quotation omitted). We pay great deference to a magistrate's determination of probable cause. *People v Keller*, 479 Mich 467, 474; 739 NW2d 505 (2007).

The United States Constitution, US Const, Am IV, and the Michigan Constitution, Const 1963, art 1, § 11, protect against unreasonable searches and seizures. *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). Generally, searches and seizures conducted without a warrant are unreasonable. *People v Borchard-Ruhland*, 460 Mich 278, 293; 597 NW2d 1 (1999). A search warrant may not be issued unless probable cause exists to justify the search. *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). "Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). Probable cause must be based on facts presented to the magistrate by oath or affirmation. *Id*. An affidavit must be read in a commonsense and realistic manner. *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006).

---

[4] We further find no indication in the record that the admitted evidence violated MRE 702's prohibition against "junk science." See *Gilbert v DaimlerChrysler Corp*, 740 Mich 749, 780; 685 NW2d 391 (2004), cert den 546 US 821; 126 S Ct 354; 163 L Ed 2d 63 (2005); *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

The affidavit submitted by Goehring contained the following facts: defendant was the driver of a silver Charger that was involved in an accident; the accident was the result of defendant running a red light; a moderate odor of alcohol emanated from defendant; and defendant said that he had consumed two beers before driving. These facts, when viewed in a commonsense and realistic manner, *id.*, allow a reasonable person to believe that evidence of a crime was in defendant's blood. *Waclawski*, 286 Mich App at 698. Moreover, these facts allowed the magistrate to make an independent probable cause determination. *People v Sloan*, 450 Mich 160, 169; 538 NW2d 380 (1995), overruled in part *People v Hawkins*, 468 Mich 488 (2003).

We reject defendant's argument that the statements he made to Goehring in the back of the ambulance could not be used to make a probable cause determination because defendant had not yet been given his *Miranda*[5] rights. In *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court held that an accused, pursuant to the Fifth Amendment right against self-incrimination, must be given a series of warnings before being subjected to custodial interrogation. *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013). An accused is not entitled to *Miranda* warnings unless he is subject to custodial interrogation. *Id.* at 302. "Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316-317; 806 NW2d 753 (2011) (quotations omitted). General on-the-scene questions to investigate a crime do not implicate *Miranda*. *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002). Goehring's questioning of defendant in the ambulance constituted general on-the-scene questioning to investigate the accident. At the hearing on defendant's motion to suppress the statements he made in the ambulance, Goehring testified that his purpose in speaking to defendant in the ambulance was to conduct a preliminary investigation into how the accident had happened. Goehring did not take defendant into custody or engage in any conduct that deprived defendant of his freedom of action in any significant way. Accordingly, Goehring was not required to inform defendant of his *Miranda* rights. *Id.*

Additionally, even if Goehring's statements in the affidavit represented a "mere conclusion or belief" that prohibited the magistrate from making an independent determination of probable cause, see *Sloan*, 450 Mich at 171, defendant is not entitled to any relief. The Fourth Amendment prohibits the use of evidence obtained pursuant to an illegal search or seizure. *People v Goldston*, 470 Mich 523, 528; 682 NW2d 479 (2004). However, the exclusionary rule is subject to numerous exceptions, including the good-faith exception. *People v Hawkins*, 468 Mich 488, 499; 668 NW2d 602 (2003). Under the good-faith exception, the exclusionary rule does not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is ultimately found to be defective. *Goldston*, 470 Mich at 525-526, citing *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984). Goehring relied on the search warrant issued by the magistrate, and nothing in the record indicates that his reliance was not objectively reasonable. Goehring did not present the magistrate with any information that he knew or should have known was false; there is no indication to suggest that the magistrate

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

wholly abandoned his judicial role; and the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. See *Leon*, 468 US at 922-923. Because Goehring's reliance on the search warrant was objectively reasonable, the good-faith exception applies and the exclusionary rule does not bar the admission of evidence of the blood draw that was obtained pursuant to the search warrant. The trial court did not err in denying defendant's motion to suppress the results of the blood draw taken pursuant to the search warrant.

### III. JURY INSTRUCTIONS

Defendant next argues that the trial court erred when it instructed the jury on the lesser offense of moving violation causing death. We review de novo claims of instructional error. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

As previously stated, defendant was charged with two counts of reckless driving causing death, MCL 257.626(4). "In a prosecution [for reckless driving causing death], the jury shall not be instructed regarding the crime of moving violation causing death." MCL 257.626(5). In *People v Jones*, 302 Mich App 434, 444; 839 NW2d 51 (2013), rev'd 497 Mich 155 (2014), this Court held that MCL 257.626(5) was "unconstitutional as a violation of fundamental due process and as a violation of the principle of separation of powers." The trial court referenced this Court's decision in *Jones* when it decided to instruct the jury on moving violation causing death. However, the Supreme Court reversed this Court's decision, holding that the Legislature had not exceeded its authority in enacting MCL 257.626(5). *People v Jones*, 497 Mich 155, 157-158, 171-172; 860 NW2d 112 (2014). The parties do not dispute that the Supreme Court's decision in *Jones* applies to the present case. See *People v Sexton*, 458 Mich 43, 64; 580 NW2d 404 (1998) (stating that judicial decisions are generally given complete retroactive effect).

However, the prosecution requests that this case be remanded in order to develop the record regarding which party requested the instruction on moving violation causing death. According to plaintiff, the trial court will determine that defendant, citing this Court's decision in *Jones*, insisted that the jury be instructed on moving violation causing death, while the prosecutor objected, citing MCL 257.626(5). Waiver is the intentional relinquishment or abandonment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation omitted). Accordingly, if defendant requested the instruction on moving violation causing death, then defendant has waived the issue whether the trial court committed instructional error and he is not entitled to any relief. See *id*. at 216.

Irrespective of whether a party moved for a remand, this Court may "remand the case to allow additional evidence to be taken" or "enter any judgment or order or grant further or different relief as the case may require." MCR 7.216(A)(5), (7). Pursuant to the authority granted in MCL 7.216(A), because the determination whether defendant requested an instruction on moving violation causing death dictates whether defendant may be entitled to any relief, we remand to the trial court for a determination whether defendant requested the instruction.

Additionally, in his question presented, defendant also claims that the trial court erred when it instructed the jury on reckless driving causing death, allowing the jury to render a

compromise verdict. We disagree. Defendant's argument is premised on the assumption that defendant's moving violation causing death conviction will be vacated. However, even if, on remand, that conviction were to be vacated, defendant is not entitled to retrial on the charge of OWI causing death relating to Herrera. Evidence relating to defendant's blood alcohol level, his operation of a vehicle, and the fact that he ran a red light was admissible as part of the res gestae of the offense regardless of whether the jury was instructed on moving violation causing death. See *People v Sholl*, 453 Mich 730, 741-742; 556 NW2d 851 (1996). In that respect, the instant case is significantly distinguishable from *People v Basinger*, 203 Mich App 603; 513 NW2d 828 (1994), on which defendant relies. *Basinger* involved the erroneous admission of other criminal acts by defendant despite the running of the statute of limitations and without adherence to MRE 404(b), not, as here, admission of evidence regarding the accident that formed the basis for all charges against defendant. *Id*. at 605.

We therefore remand for the trial court to determine whether defendant requested the instruction on moving violation causing death. If he did, the issue is waived and the conviction stands. If he did not, it was plain error, in light of MCL 257.626(5) and *Jones*, 497 Mich at 157-158, for the trial court to give such an instruction, and defendant's conviction for moving violation causing death must be vacated.

## V.  SENTENCING

Finally, defendant argues that he is entitled to be resentenced because the trial court, in scoring the legislative sentencing guidelines, engaged in judicial fact-finding contrary to *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). We disagree. We must analyze this issue in light of our Supreme Court's recent decision in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015).

In *Lockridge*, the Supreme Court held that in order to avoid any Sixth Amendment violations, Michigan's sentencing guidelines scheme was to be deemed advisory, instead of being mandatory. *Id*. at __ (slip op at 28). The concern is that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id*. at __ (slip op at 1). As a result, the guidelines no longer can be considered mandatory, but sentencing judges must consult the guidelines and " 'take them into account when sentencing.' " *Id*. at __ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

In determining whether there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at __ (slip op at 32). If the answer is "yes," then a defendant cannot establish any plain error. *Id*. at __ (slip op at 32). If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, the court would have imposed a materially different sentence. *Id*. at __ (slip op at 34). If the court determines that it would have imposed a materially different sentence, then it shall order resentencing. *Id*. at __ (slip op at 34).

In this case, the sentencing offense was OWI causing death. Defendant had a prior record variable (PRV) score of 37 points and an offense variable (OV) score of 95 points. The recommended minimum sentence range under the legislative sentencing guidelines was 50 to 150 months. The trial court assessed points to five OVs: (1) OV 3 (physical injury to victim, MCL 777.33) was scored at 50 points; (2) OV 5 (psychological injury to a member of a victim's family, MCL 777.35) was scored at 15 points; (3) OV 9 (number of victims, MCL 777.39) was scored at 10 points; (4) OV 17 (degree of negligence exhibited, MCL 777.47) was scored at 10 points; and (5) OV 18 (operator ability affected by alcohol or drugs, MCL 777.48) was scored at 10 points. Defendant does not articulate which of these OVs he contends were scored based on judicial fact-finding.

OVs 3 and 9 were scored based on facts necessarily found by the jury. Herrera and Fischer were both killed in the accident. Additionally, OV 18 was necessarily found by the jury as an explicit element of the sentencing offense.

OV 17 was not scored according to facts found by the jury. "Under the plain language of MCL 257.625(4), there is no requirement that the People prove gross negligence or negligence in order to prosecute someone for causing another person's death by operating a vehicle while intoxicated." *People v Lardie*, 452 Mich 231, 249; 551 NW2d 656 (1996), overruled in part by *People v Schaefer*, 473 Mich 418, 433; 703 NW2d 774 (2005). The jury was therefore not required to find negligence or gross negligence. However, the prosecution argues that in any event OV 6 (offenders intent to kill or injure another individual, MCL 777.36) should have been scored at 10 points for defendant's gross negligence, and we agree. *Lardie*, 452 Mich at 250, states that "[i]n eliminating the issue of gross negligence as a question of fact for the jury, the Legislature essentially has presumed that driving while intoxicated is gross negligence as a matter of law." A trial court is required to score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). A score of ten points for OV 6 would be consistent with, and required by, the jury's verdict because defendant was convicted of a crime in which gross negligence is presumed. If OV 6 is scored, OV 17 may not be scored. MCL 777.47(2).

Thus, as a matter of law defendant should have been scored 10 points for OV 6 instead of OV 17, which when added to the scores for OVs 3, 9, and 18, gives defendant an OV score of 80. The facts necessarily found by the jury were therefore "sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Lockridge*, slip op at 32. Under *Lockridge*, resentencing or remand is not required.

Affirmed in part, and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey